CASE 85.—ACTION BY RACHEL RADERS ADMRX. AGAINST
    THE LOUISVILLE & NASHVILLE R. R. CO., FOR
    CAUSING THE DEATH OF HER INTESTATE.—
    October 16.

## Rader's Admrx. v. Louisville & Nashville R. R. Co.

Appeal from Laurel Circuit Court.

H. C. FAULKNER, Circuit Judge.

From a judgment awarding a peremptory instruction in favor of defendant the plaintiff appeals. Reversed.

1. Railroads—Actions for Injuries on Tracks—Negligence—Questions for Jury.—In an action against a railway company for the negligent killing of plaintiff's intestate while on defendant's track, evidence considered, and held sufficient to go to the jury.

2. Same—Operation—Care Required as to Trespassers.—Failure of those in charge of a train to give warning of a railroad train passing through a city or town or approaching a crossing is negligence of the greatest degree, and such failure will render the company liable for injury caused, even to a trespasser.

3. Same.—Railroad company is liable for an injury done to a trespasser, as well as to a person lawfully upon its track, if his peril was, or by the exercise of that character and degree of care required in operating railroad trains might have been, discovered in time to prevent or avoid injury to him.

4. Same—Actions for Injuries—Negligence—Questions for Jury.—Where a railroad company has knowledge of a trespasser or licensee on its tracks or notice of their expected and probable presence, the rate of speed may be negligent as to them, and whether it is negligence is a question for the jury.

W. E. BEGLEY and R. A. DYCHE for appellant.

Raders Admrx. v. Louisville & Nashville R. R. Co.

## CASES AND AUTHORITIES CITED.

1. The court erred in giving peremptory instructions to the jury to the prejudice of appellant. (Southern Ry. in Ky. v. Goddard, 89 S. W. 675; Miller v. Metropolitan Life Ins. Co., 8ʋ S. W. 183; Fugate v. City of Somerset, 29 S. W. 970, 16 Ky. Law Rep. 807; Budford v. L. & N. R. R. Co., 82 Ky. 286; Thompson v. Thompson, 17 Ben Monroe 22; Payne Clothing Co. v. Payne, 21 Ky. Law Rep 1226, 11 Bush 265; Wilmurth's Admr. v. Ill. Central. R. R. Co., 76 S. W. 193; Ill. Central R. R. Co. v. Murphy's Admr., 97 S. W. 729; Davis v. Louisville, Henderson & St. L. Ry. Co., 97 S. W. 1122; K. & I. Bridge Co. vs. Sydon, 87 S. W. 989, and 26 Ky. Law Rep. 951; Price's Admr. v. L & N. R. R. Co., 76 S. W. 836.)

2. Petition is not defective because it does not negative contributory negligence. (Stephens on Pleadings, 350; Depp v. Louisville, &c., R. R. Co., 14 S. W. 363; Louisville, &c., Canal Co. v. Murphy, 9 Bush, 522; Louisville, &c., R. R. Co. v. Wolfe, 80 Ky. 82; Encyclopedia of Pleading and Practice, vol. 5, p. 1 to 4, inclusive.)

BENJAMIN D. WARFIELD, attorney for appellee.

J. W. ALCORN of counsel.

## POINTS DISCUSSED AND AUTHORITIES CITED.

1. The testimony shows that plaintiff's intestate was not in a place of peril until the engine was within a few feet of her, when she stepped upon the main track or close enough thereto to be instantly struck by the pilot beam of the engine after the cow-catcher had passed her. Decedent did not take, and counsel for appellant concede that decedent did not take, any precautions for her own safety. She was guilty of contributory negligence as a matter of law, and the trial court properly instructed the jury that because of her own negligence, but for which the accident would not have happened, there can be no recovery in this case. (L. & N. R. R. Co., v. Creighton, 106 Ky. 42; Ib. v. Smith, 107 Ky. 178; L. & N. R. R. Co. v. Redmon's Admx., 28 Ky. Law Rep. 1293; Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228; Yates v. I. C. R. R. Co., 28 Ky. Law Rep. 75; Freel's Admr. v. L. H. & St. L. R. R. Co., Ib. 76; L. H. & St. L. R. R. Co. v. Hathaway's Exor., Ib. 628; Smith's Admr. v. I. C. R. R. Co., Ib. 723; L. & N. R. R. Co. v. Daniel, Ib. 1146; I. C. R. R. Co. v. Johnson, 97 S. W. 745; Hoskins' Admr. v. L. & N.

R. R. Co., 17 Ky. Law Rep. 78; Johnson v. Paducah Ldy. Co., 29 Ky. Law Rep. 59; Groves v. ᴌ. & N. R. R. Co., 96 S. W. 439, 29 Ky. Law Rep. 725; Elliott v. L. & N. R. R. Co., 30 Ky. Law Rep. 471; Gregory v. L. & N. R. R. Co., 25 Ky. Law Rep. 1986; Davis v. L. H. & St. L. Ry. Co., 97 Ky. 1122; Parkerson's Admx. v. L. & N. R. R. Co., 25· Ky. Law Rep. 2260; L. & N. R. R. Co. v. Mounce's Admr., 28 Ky. Law Rep. 933; R. Co. v. Williford, 115 Tenn. 115; Elliott v. C. M., &c., R. R. Co., 150 U. S. 248; Patton, Admr. v. Ry. Co., 89 Tenn. 379; Brennan v. D. L. & W. Ry Co., 83 Fed 124, 27 C. C. A. 418; Grethan Admr. v. C. M. & St. P. R. R. Co., 22 Fed. 610; K. C. F. S. & M. Ry. Co. v. Cook, 66 Fed. 113, 13 C. C. A. 364; L. H. & St. L. R. R. Co. v. Jolly's Admr., 28 Ky. Law Rep. 989.

2. It was negligence in decedent, whose hearing and sight were obstructed and obscured by the sunbonnet and umbrella not to have exercised greater precaution in approaching the railway track than would have been required of her if her sight and hearing had not been thus voluntarily impaired. (Thompson's Commentaries on the Law of Negligence, vol. 2, sections 1658, 1659, 1660; L. & N. R. R. Co. v. McCombs, 21 Ky. Law Rep. 1232.)

OPINION OF THE COURT BY JUDGE NUNN— Reversing.

This is an appeal from a judgment of the Laurel circuit court in which appellant sought to recover damages of appellee for the negligent destruction of her intestate's, Rachael Rader's, life. When appellant closed her evidence, appellee moved for a peremptory instruction, which was overruled. However, at the close of all the testimony, appellee renewed its motion for a peremptory instruction, and the court sustained the motion and gave the instruction, to which appellant objected and excepted.

Therefore the only question is: Was there any, a scintilla, of testimony supporting appellant's cause of action? This necessitates the consideration of the evidence introduced. Rachael Rader, the deceased, was 12 years and 11 months of age at the time she

was killed. She lived in the town of Pittsburg, Ky., nearly one-half mile from the station. The population of the town was at the time about 1,000 or 1,200. The town was located in the main, so that the business and dwelling houses faced and were on each side of the railroad track; there being a roadway on each side. The track was so constructed through the city that in some places it was elevated a few feet above the level of the dirt roads. There was only one street, or public road, over which vehicles could cross the track, and that was near to and south of the station. The railroad passes through the town in a northern and southern course; and more than one-half is within the town limits. This little girl, on the afternoon of January 3, 1903, was sent by her mother to the Pittsburg Company's store, which is situated on the west side of the railroad, and several hundred feet south of the station and this crossing for vehicles, and to the post office. She obtained the article, tobacco, from the store which she was sent for, and started to the post office, which is situated near the station and on the east side of the railroad. She came out of the store, passed between some piles of lumber, which were stacked near or in front of the store, and then moved along a path leading in the direction of the post office. She was going in a northwestern course, which placed her right side or back nearest to the train which was coming from the south. She was walking slowly, and appeared to be trying to raise an old umbrella. According to appellant's proof, it was raining or sleeting at the time. She crossed appellee's passing track, and walked a few steps along the main track, stopped and placed one foot upon the end of a tie, and made another effort to raise the umbrella, when the crossbeam of

the engine struck her on the right side of the head, and killed her. All the testimony tends to show that she was from the time she left the store apparently unconscious of the approach of the train. The fireman testified that he saw her from the time she came from behind the piles of lumber until she was killed, but did not believe she would go upon or near the track. When he first saw her, he was about a quarter of a mile away, and the engineer and fireman both testified that the whistle was blown for the station and semaphor about that distance from the station, and the bell was rung continuously until the girl was killed. Appellant's testimony agrees with appellee's with reference to the blowing of the whistle, but contradicts it with reference to the ringing of the bell. The engineer testified that he had run a train through the town of Pittsburg for nearly 18 years, and that "he was always looking out for people on the track. There are always a lot of people there. It is a mining town, and we always keep a sharp lookout for them." The evidence conduces to show that persons repeatedly crossed back and forth over this railroad track during the day with the knowledge of the servants of appellee in charge of its trains. It also appears that this train was being run at the rate of 25 or 30 miles an hour, and consisted of 26 heavily loaded cars, excluding the engine, tender, and caboose, and those in charge were not able to stop it until it ran the full length of the train and three or four car lengths in addition. With this evidence before the jury, in our opinion, the court erred in giving the peremptory instruction. The evidence conduced to prove that appellant's servants were negligent in failing to ring the bell as they approached the deceased; at least, there was conflict of proof on this

point, and they were moving the train at a negligent and dangerous rate of speed through the town.

In the case of East Tennessee Coal Co. v. Harshaw, 29 S. W. 289, 16 Ky. Law Rep. 526, the court said: "The evidence shows the engineer of that coal train did not signal its approach to the crossing by either whistle or bell; and that the railroad was for about 200 yards beyond straight enough to enable the engineer to see a person at or near that point. The failure of those in charge to give warning of a railroad train passing through a city or town, or approaching a crossing of a street or public road, has been held by this court negligence of the greatest degree, and will render the company owing it liable for injury caused by such failure, even to a trespasser. It is also well settled that such company is liable for injury done as well to a trespasser as to a person lawfully upon it track, if his peril was, or by exercise of that character and degree of care required in operating railroad trains might have been, discovered in time to prevent or avoid injury to him." In the case of Illinois Cent. R. R. Co. v. Murphy's Adm'r, 123 Ky. 787, 97 S. W. 729, 30 Ky. Law Rep. 93, the court said: "If the railroad company knows that the public habitually uses its tracks and right of way in a populous community as a foot passway, so that it knows that at any moment people may be expected to be found thereon, such knowledge is treated as equivalent to seeing them there, and their presence must be taken into consideration by the train operatives in the movement of their trains Such foot passengers may be in law only trespassers or licensees—they may, indeed, have no legal right to be there or to use the track—but the question comes back: If they are there and known to be there, what

then is the company's duty as to running its trains?
It is admitted that the company has the superior
right—nay, maybe has the exclusive right—to the
track, and that some way ought to be provided for
keeping trespassers off them altogether   But the fact
remains the tracks are open, inviting for easy travel,
are traveled constantly, and so known to be by the
company.   The difference between the cases in the
country and those in thickly settled towns and cities
is one of practical materiality.   In the country there
are occasional sporadic uses of the tracks by foot pas-
sengers.   But they are comparatively rare.   To com-
pel the railroad trains to creep along under full con-
trol in anticipation of what probably would not occur,
viz., the meeting or overtaking of a stray trespasser,
would not be reasonable, because most likely wholly
unnecessary.   But in populous communities the
probabilities are all the other way.   The foot pas-
sengers from long habit of use, which are known to
and suffered by the company, may reasonably be
expected at all times, and in any number.   It is more
than a mere probability—it is a reasonable certainty
that they will be found there.   The company should
no more shut its eyes to such a probability within
its knowledge than to the actual fact of the presence
when known.   We will not say that to dash at uncon-
trollable speed through such a town, where people are
known to be using the tracks for passing, is not neg-
ligence.   Let the jury say whether it is.   The trial
court did not submit this phase of the case to the
jury.   On the contrary, it was assumed that the com-
pany had the right to run its trains at that point at
any rate of speed it desired, but that it must keep
a lookout for trespassers, and if those in charge of
the train saw, or by the exercise of ordinary care

could have seen, decedent in time to have avoided injuring him, it was their duty to do so. There are cases which hold that the rate of speed in towns may or may not be negligent without respect to an ordinance. And it is held that where trespassers are on the railroad track, their presence being unknown, the rate of speed is never negligent as to them, because no duty whatever was then owed to them by the railroad company. But we think the correlative principle must apply that, where there is knowledge of the presence of trespassers or licensees, or, what is equivalent, notice of their expected and probable presence, the rate of speed may be negligent as to them, because there is then a duty to them, viz., to look out for them, and take care not to run over or injure them.'' See, also the case of I. C. R. R. Co. v. Wilson, 63 S. W. 608, 23 Ky. Law Rep. 684.

For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.

Petition for rehearing by appellee overruled.