Louisville & Nashville R. R. Co. v. McNary's Admr.

CASE 43.—ACTION BY MARY McNARY'S ADMR. AGAINST THE LOUISVILLE & NASHVILLE R. R. CO FOR CAUSING DEATH OF PLAINTIFFS INTESTATE.—March 13.

# Louisville & Nashville R. R. Co. v. McNary's Admr.

Appeal from Hopkins Circuit Court.

DAVID H. KINCHELOE, Special Judge.

Judgment for plaintiff. Defendant appeals.—Reversed.

1. Railroads—Operation of Trains—Care as to Trespassers.—The rule that a railroad company ordinarily owes no duty to a trespasser until his peril is discovered, and that it is not liable for an injury to him unless after his peril is discovered the injury may be avoided with proper care, does not apply in cities and towns where the danger to life is great, and in such localities it is the duty of those operating trains to moderate the speed, give notice of their approach, and keep a lookout and take such precautions as the circumstances demand.

2. Same—Notice of Approaching Train—Right to Rely Thereon.—Though a pedestrian killed in crossing in front of a train could have seen it if she had looked just before she went on the track, she had a right to assume that proper notice of its approach would be given.

3. Same—Contributory Negligence—Question for Jury.—If there is any evidence of contributory negligence of a pedestrian crossing the track in front of a train, the question is for the jury, and the scintilla rule applies to such question no less than to others.

4. Same—Private Crossing—Through Express Trains—Knowledge of Danger.—While though express trainmen naturally know nothing of a private path across the track near a way station, the company is charged with knowledge that at such station

is a town of 400 or 500 people, and that its depot is approached by persons walking along the track in both directions, there being no other adequate way to get to it, and so must be held to know that this is a place at which the presence of persons on the track might reasonably be anticipated.

5. Same.—A railroad company is not exempt from liability for killing a pedestrian because she was at a private crossing and was not going to its station, where the crossing is in a town where the presence of persons on the track is to be anticipated, and where it is required to keep a lookout for them and give adequate notice of the approach of a train.

6. Same—Speed of Train—Notice of Approach.—Where a train passes through a cut and emerges from a curve within a town, and so close to the station where the presence of persons on the track or about it may reasonably be expected, adequate notice of its approach should be given, and the speed be such that the lookout would not be idle.

7. Same—Gross Negligence—Punitive Damages.—A pedestrian was killed by a through express train at a private crossing just before passing a way station. The trainmen did not see her in time to stop, and the right to recover was based on evidence of their negligence in failing to check the speed of the train, keep a lookout, and give proper signals of their approach. Held, that it was error to submit the question of punitive damages or of gross negligence.

8. Same—Approaching Train—Reasonable Signal.—A signal of a train's approach ordinarily sufficient to give notice to persons exercising ordinary care for their own safety, and in possession of their ordinary faculties is reasonable.

9. Same—Contributory Negligence.—If a pedestrian in going on the track in front of train failed to use ordinary care, and but for this would not have been injured, there can be no recovery notwithstanding the negligence of the trainmen.

BENJAMIN D. WARFIELD for appellant.

WADDILL & DEMPSEY of counsel.

POINTS DISCUSSED AND AUTHORITIES CITED.

1. The petition as twice amended did not state any cause of action against appellant, and its demurrers thereto should have been sustained. (L. & N. R. Co. v. Breeden's Admrx., 111 Ky., 738; Embry v. L. & N. R. Co., 18 Ky. Law Rep., 434; Smith's Admr. v. I. C. R. Co., 28 Ky. Law Rep., 724; L. & N. R. Co. v.

Louisville & Nashville R. R. Co. v. McNary's Admr.

Redmon's Admx., Ib., 1296; Brown's Admr. v. L. & N. R. Co., 97 Ky., 228; Monehan v. S. C. & C. St. Ry. Co., 117 Ky., 771, 776; L. & N. R. Co. v. Hocker, 111 Ky., 707, 712; Beiser v. C. & O. R. Co., 29 Ky. Law Rep. 249; C. & O.. R. Co. v. Barber's Admr., 29 Ky. Law Rep., 339; Prince v. I. C. R. Co., 30 Ky. Law Rep., 469; Elliott v. L. & N. R. Co., 30 Ky. Law Rep., 471; L. H. & St. L. R. Co. v. Woolfolk, Ib., 569; C. & O. R. Co. v. Nipp's Admx., 30 Ky. Law Rep., 1131.)

2. The trial court erred in compelling appellant to try this case in the absence of its witness, Mrs. Yuong.

3. Under the testimony, appellant was entitled to a peremptory instruction either at the close of appellant's testimony or at the close of all the testimony. Appellee proved no case against appellant. L. & N. R. Co. v. Daniel, 28 Ky. Law Rep., 1146; Yates v. I. C. R. Co., 28 Ky. Law Rep., 75; Freel's Admr. v. L. H. & St. L. R. Co., Ib., 76; L. H. & St. L. R. Co. v. Hathaway's Extx., Ib., 628; Smith's Admr. v. I. C. R. Co., Ib., 723; L. H. & St. L. R. Co. v. Jolly's Admr., Ib., 989; L. & N. R. Co. v. Redmon's Admrx., Ib., 1293; Johnson v. L. & N. R. Co., 29 Ky. Law Rep., 36; Beiser v. C. & O. Ry. Co., Ib., 249; C. & O. Ry. Co. v. Barber's Admr., Ib., 339; I. C. R. Co. v. Willis's Admr., Ib., 1187; Prince v. I. C. R. Co., 30 Ky. Law Rep., 469 and cases there cited; Elliott by Etc. v. L. & N. R. Co., Ib., 471; Hoback's Admr. v. L. H. & St. L. R. Co., Ib., 476; L. H. & St. L. R. Co. v. Woolfolk, Ib., 569; C. & O. Ry. Co. v. Nipp's Admr., Ib., 1131.)

4. The court erred in admitting incompetent testimony for appellee, and in rejecting competent testimony offered for appellant.

5. The speed of the train was not negligence as to decedent. (L. & N. R. Co. v. Goetz, 79 Ky., 442; Parkerson's Admr. v. L. & N. R. Co., 25 Ky. Law Rep., 2260; L. & N. R. Co. v. Molloy's Admrx., 28 Ky. Law Rep. 1113, 1117; Ib. v. Cumming's Admr., 111 Ky., 333.

6. Decedent having been a trespasser at the time and place she was killed was not entitled to the benefit of signals to which a person using the public crossing not far away from the point of accident would have been entitled. N. N. & M. V. R. Co. v. Deuser, 97 Ky., 92; Shackelford's Admr. v. L. & N. R. Co., 84 Ky., 43; L. & N. R. Co. v. Redmon's Admr., supra, 28 Ky. Law Rep., 1299, 1300.)

7. The court erred in instructing the jury on motion of appellee; and especially in authorizing the jury to find compensatory damages where there was no evidence to show that decedent was of any pecuniary value to her estate, and in authorizing punitive damages under the facts of this case. (Covington Saw Mill

Louisville & Nashville R. R. Co. v. McNary's Admr.

& Mfg. Co. v. Drexilius, &c., 27 Ky. Law Rep., 903; I. C. R. Co. v. Lence, 30 Ky. Law Rep., 988; L. & N. R. Co. v. Mount, 101 S. W., 1182, and cases there cited.)

8. It was negligence in decedent, whose hearing and sight were obstructed and obscured by the sunbonnet she wore not to have exercised greater precaution in approaching and going upon the railroad track than would have been required of her if her sight and hearing had not been thus voluntarily impaired. (Thompson's Commentaries on the Law of. Negligence, vol. 2, secs. 1658, 1659, 1660; L. & N. R. Co. v. McCombs, 21 Ky. Law Rep., 1232.)

YOST & LAFFOON for appellee.

### AUTHORITIES CITED.

Practice and Pleading, Newman, revised 324a; L. & N. R. R. Co. v. Daniels, 91 S. W., 691; I. C. R. R. Co. v. Murphy's Admr., 97 S. W., 729; Rader's Admr. v. L. & N. R. R. Co., 104 S. W., 774.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Barnsley, Ky., is a town of the sixth class. It has from 400 to 500 inhabitants. It is a mining town. The Louisville & Nashville Railroad runs through it. There are two stores—one on one side of the railroad, and one on the other. A path runs from one of these stores directly across the railroad to a street on the opposite side, the town lying about equally on each side of the railroad. This path was considerably used by the people of the town in passing to and fro, from 50 to 100 people passing along it every day. There was a street crossing over the railroad about 200 feet north of the path, and about midway between the path and the street was the railroad station. About 800 feet south of the path there was another crossing. In April, 1905, Mary McNary, a woman about 70 years old, was walking along this path going east towards Clark's store. She had on a bonnet, and was not looking out for the train, and just as she got on the

track she was struck and killed by a fast passenger
train coming from the south, and running 40 or 50
miles an hour.   The train was a through express,
which stopped at only three or four points in the
State, and did not check its speed at Barnsley.  Per-
sons in the northern part of the town in going to the
depot were accustomed to walk along the street north
of it until they came to the railroad crossing, and
then to walk along the railroad track to the depot.
Persons in the southern part of the town followed the
path to the railroad track, and then walked along the
track to the depot.   The path was also used by per-
sons on one side of the railroad to go to the other
side.   The situation is shown by the following plot,
on which A indicates the point where the woman was
struck:

The only witness for the plaintiff who saw the occurrence was at the house next to Clark's store, and thus states what occurred: "Me and Dona Thomasson was there, and when I came to the door I seen this old lady coming along the dirt road. She was over six feet from the railroad track, and she was coming on across, and the train was coming down here about 30 feet from here. Mrs. Young and her two little boys and I were looking and I never seen the train blow a whistle or ring a bell until it hit her. It hit her, and come on up to a telephone post, and whistled two little short whistles, cleared the crossing, and whistled five times."

Mrs. Young's testimony was introduced by the defendant, and was as follows: "I saw Mary McNary killed. The accident occurred right in front of my dwelling. I lived in Barnsley on the east side of the point of accident about 30 or 40 yards from the track. My house was the nearest house to the track. I saw Mary McNary come upon the track from the west side to the track just opposite my house. Just as she stepped to the track the train whistled, and she ran across the track, but before she got across she was struck and pitched on the east side of the track. When she came upon the track she had on a bonnet, and did not look up or down the track, but was looking down to the ground. If she had looked up the track when or before she stepped upon the track she could have seen the approaching train for a long distance."

The track, as shown by the map, makes a slight curve just north of the path, and passes through a cut. The engineer of the train testified that the fireman called his attention to the woman, and almost simultaneously with his exclamation she appeared on

his side. The fireman being on the left side would naturally see her first, and as shown on the plot neither of them could see her until they were very close to her. The train was running at its usual speed at that point. There was considerable proof for the plaintiff by witnesses who testified that there were no signals given of the approach of the train, and on the other hand there was proof for the defendant by a number of witnesses that the signals were given. The jury found for the plaintiff, fixing the damages at $1,235. The railroad company appeals.

It is very evident from the proof that those in charge of the train did not see the woman, and could not have seen her in time to avoid striking her. She was hid from them by the cut until they were so close to her that nothing could be done. She was evidently on the track when they saw her, and they were then so close to her that she was struck by the train before she could get out of the way. She was not on a public crossing. It was simply a path across the railroad, similar to many others on all railroads used by people in the vicinity. The railroad men testify that they did not know anything of the path. This court has laid down in a long line of opinions that the railroad company ordinarily owes no duty to a trespasser until his peril is discovered, and that it is not liable for an injury to him, unless after his peril is discovered the injury to him may be avoided with proper care. This rule has been applied in all cases where the injury occurred in the country. L & N. R. R. Co. v. Howard's Adm'r, 82 Ky. 212, 6 Ky. Law Rep. 163; Shackelford's Adm'r v. L. & N. R. Co., 84 Ky. 43, 7 Ky. Law Rep. 729, 4 Am. St. Rep. 189; Brown's Adm'r v. L. & N. R. Co., 97 Ky. 228, 17 Ky. Law Rep. 145, 30 S. W. 639; Goodman's

Adm'r v. L. & N. R. R. Co., 116 Ky. 900, 77 S. W. 174, 25 Ky. Law Rep. 1086, 63 L. R. A. 657; C. & O. R. Co. v. See's Adm'r, 79 S. W. 252, 25 Ky. Law Rep. 1995, and cases cited.

On the other hand, in cities and towns where the population is dense, and from the number of persons passing the danger to life is great, a different rule applies; and in such localities it is the duty of those operating railroad trains to moderate the speed of the train, to give notice of its approach, to keep a lookout and take such precautions as the circumstances demand for the proper security of human life. Thus in Shelby's Adm'r v. Cincinnati, etc., R. Co., 85 Ky. 225, 8 Ky. Law Rep. 928, 3 S. W. 157, the intestate a few hours before his death had been employed by the owner to water hogs in a box car of a freight train. At the time he was killed he was in the yard to solicit employment by the same person in watering cattle in a car of another train, and was standing on the side track opposite the cattle car waiting for the owner who was in it. While he was standing there some cars were kicked in on that track without any signal and with no one upon them to control them. These cars ran over him and killed him. The accident happened at Junction City, a place of 400 persons. About 20 families resided south of the railroad and were accustomed to pass along the side track at this point in going to the part of the town north of the road. It was held that the plaintiff could recover. The court said: "There is some conflict of authority as to the extent of duty which a railroad company owes to pedestrians who, by license or custom, use its track to travel on. But unquestionably such fact should enhance the duty of the servants of the company to exercise caution and

prudence in the operation of its road at such place. 1 Thompson on Negligence, 453. And in our opinion the full performance of duty requires that neither a train or single car should be moved at such place without some servant is in a position to give warning of its approach and control its movements." In L. & N. R. Co. v. Schuster, 7 S. W. 874, 10 Ky. Law Rep. 65, the plaintiff was hurt on the track of the Louisville & Nashville Railroad between Beargrass creek and its depot in the city of Louisville. There was at the place a fill 20 or 30 feet high, and about 23 feet wide at the top. On this fill there were two tracks. Buchanan street had been constructed to within 150 or 200 feet of this fill on the south side, but no street passed the fill or came nearer than this. The plaintiff and a companion came along Buchanan street, and then followed a path over the railroad fill. When they got upon the top of the fill a train was passing them on one track, and while they were standing upon the other track waiting for this train to pass Schuster was struck by a train going in the opposite direction on the track on which he was standing. Many persons lived and worked in the vicinity, and there was much passing along the railroad track at this point. It was held that he could recover. The court said: "The degree of care to be exercised by a railroad company must necessarily depend upon the location and the circumstances of the case. At places not frequented by the public, either by right or the permission, express or implied, of the company, and in localities where people are not constantly passing about, and where they cannot reasonably be expected to be, those in charge of a train are not required by law to be on the lookout for them. In such cases the company is entitled to the exclusive

use of its track, and those upon it are trespassers, and those in charge of a train are only required to avoid injury to them if they can do so upon becoming aware of their peril. In a place thickly populated, however, and where many persons are known to be constantly passing about and across the road, as in a city like Louisville, the public interest and regard for the safety of human life require a different rule. In such a case those in charge of such a dangerous agency as a railroad train must be on the lookout for persons upon and crossing its tracks, and must, by the customary signals, warn them of the approaching danger. This rule should be rigidly enforced." In Conley's Adm'r v. Cincinnati, etc., R. Co., 89 Ky. 402, 11 Ky. Law Rep. 602, 12 S. W. 764, Conley was killed at Burgin, Ky., a place of about 200 people. A train pulling into Burgin was cut in two about a mile north of the station, the engine running rapidly forward with a part of the cars, and leaving the hinder part of the train to follow on more slowly by its own momentum. It was at night, and dark. There was no light upon the hinder part of the train, and no signal given of its approach. After the engine with its cars had passed the station Conley undertook to walk from the depot across to the section house either on the path leading from one to the other or near the patch, and while doing so was struck by the hinder part of the train which had no light upon it, and gave no warning of its approach. It was held that he could recover. In Gunn v. Felton's Receiver, 108 Ky. 561, 22 Ky. Law Rep. 268, 57 S. W. 15, a child 13 years of age suffering from headache fell asleep in the yard of the railroad at Danville. One of his arms rested upon the railroad track. While lying there in this position he was run over by a

train. The place at which he was hurt was one where the presence of persons on the track was to be anticipated. It was held that it was the duty of the defendant to be on the lookout and use ordinary care for the protection of such persons. In C. & O. R. Co. v. Perkins, 47 S. W. 259, 20 Ky. Law Rep. 608, Perkins lived in Lexington, and was walking along the railroad track east of Ellerslie avenue, and between it and the Winchester pike. The roadway along there was much used by people in passing to and fro. He was struck by a train coming up behind him, and a recovery was sustained on the ground that a proper lookout was not maintained. In L. & N. R. Co. v. McCombs, 54 S. W. 179, 21 Ky. Law Rep. 1233, McCombs was following a path across the railroad track in the city of Hopkinsville. There were two cross-streets with regular crossings, but he left the public way and undertook to cut across a lot by following the path which was much used by persons in that vicinity. He crawled under a freight train on one track, and was afterward struck by a passenger train on another track running at a very high rate of speed. It was held the case should go to the jury upon the ground that it was the duty of the railroad to moderate the speed of its trains in localities such as that. In C. & O. R. Co. v. Keelin's Adm'r, 62 S. W. 261, 22 Ky. Law Rep. 1942, the intestate was killed in Catlettsburg at a point where many persons walked upon the railroad track, while he was standing on one track waiting for a train on the other track to pass. A recovery was sustained. The principles involved in these cases have been followed in a number of subsequent opinions. See L. & N. R. Co. v. Potts, 92 Ky. 30, 13 Ky. Law Rep. 344, 17 S. W. 185; L. & N. R. Co. v. Cummins' Adm'r, 111 Ky. 333, 23 Ky. Law

Rep. 681, 63 S. W. 594; L. & N. R. Co. v. Lowe, 118 Ky. 260, 80 S. W. 768, 25 Ky. Law Rep. 2317, 65 L. R. A. 122; I. C. R. Co. v. Murphy's Adm'r (Ky.) 97 S. W. 729, 30 Ky. Law Rep. 93, 11 L. R. A. (N. S.) 352; Rader's Adm'r v. L. & N. R. Co. (Ky.) 126 Ky. 722, 104 S. W. 774, 31 Ky. Law Rep. 1105; L. & N. R. Co. v. Taylor's Adm'r (Ky.) 104 S. W. 777, 31 Ky. Law Rep. 1142, and cases cited.

The court here instructed the jury in effect that, if the place was habitually used by the public with the knowledge of the defendant, and the presence of persons on the track there was reasonably to be anticipated by it, it was its duty to keep a lookout for them, to give such signals of the approach of the train as were reasonably necessary, and to run its train at such speed as ordinary care for their safety required; that if it failed to do this, and by reason of such failure the intestate was killed, they should find for the plaintiff; but that, although there was negligence on the part of the defendant, yet, if the intestate failed to use ordinary care for her own safety, they should find for the defendant. He also instructed the jury that they should find for the defendant if a signal of the approach of the train was given which was ordinarily sufficient to give notice thereof to persons exercising ordinary care for their own safety. The finding of the jury for the plaintiff under the instructions was necessarily a finding that the train did not give notice of its approach ordinarily sufficient to warn persons who were exercising ordinary care for their own safety, and that the intestate did exercise ordinary care for her own safety. The evidence was very conflicting as to the signals given by the train; but the jury were warranted from all the evidence in concluding that the train whistled for

the crossing 800 feet south of the pathway at which the plaintiff was crossing, but that it did not whistle any more or give any other signal of its approach until about the time it struck the woman. The sounds may have been deflected by the sides of the cut so that the woman as she approached the railroad track heard neither the whistle nor the noise of the approaching train. It was running so rapidly that it covered the distance in a very few seconds. The woman manifestly could have seen the train if she had looked in that direction just before she went upon the track, but she had a right to assume that notice of the approach of a train would be given; and where proper signals are not given this court has held in a number of cases that the question whether the traveler used ordinary care is for the jury. Cahill v. Railroad Co., 92 Ky. 345, 18 S. W. 2, 13 Ky. Law Rep. 714; L. & N. R. Co. v. Cooper, 56 S. W. 144, 21 Ky. Law Rep. 1644; L. & N. R. Co. v. Lucas' Adm'r (Ky.) 98 S. W. 309, 30 Ky. Law Rep. 359, 539, and cases cited above. To hold as a matter of law that the footman is guilty of contributory negligence barring a recovery for his injury whenever he goes upon a railroad track without stopping, looking, or listening would be practically to exempt railroads from all responsibility in cases of this sort; for there are few cases indeed where the footman if he stopped, looked, or listened could not save himself by stepping to one side and waiting for the train to pass. But the fact is that a person thinking of his own business is sometimes unmindful of where he is, and will get on the railroad track before he is aware of it, or he will from other causes be endangered from passing trains. So it is that in crowded localities, when the presence of persons on the track is to be anticipated, a lookout

is required of those operating trains, and notice of their approach and such moderation of speed as will make a lookout and signals of the train's approach available for the safety of the traveling public. In each case the question whether the traveler used proper care will depend on a number of circumstances, such as the number of trains passing, the warning of the train's approach, and the circumstances surround- ing him. In this State if there is any evidence the question is for the jury, and the scintilla rule applies to questions of contributory negligence no less than to other questions. Where the scintilla rule does not prevail, a different conclusion is reached by the courts; but where the scintilla rule is followed, the cases are in the main in accord with the conclusion stated above, for the reason that whether the traveler exercised such care as may be ordinarily expected of the common run of persons being a question depend- ing on a number of circumstances, to each of which different men may give different weight, is a matter peculiarly for the jury.

If the carrier had shunted cars down this track in the nighttime, with no light upon them, and with nobody on the cars to control them, and had thus run over the woman at the path crossing, under the author- ities above referred to, it would have been liable. But to run a train along there without sufficient notice of its approach at such speed that those in charge of it were powerless to accomplish anything by a lookout after they rounded the curve in the cut was just as great a menace to human life as to have shunted the cars along the track in the dark in the manner sup- posed. While the men in charge of the train naturally knew nothing about the path at this station, where they did not stop, the defendant was charged with

the knowledge that Barnsley was an incorporated town of 400 or 500 people. It was also charged with the knowledge that its depot was approached both on the north and on the south by persons walking along the railroad track, there being no other adequate way to get to it; and so it was charged with knowledge that this was a place at which the presence of persons on the track might reasonably be anticipated. If the woman had been killed at the street crossing, under the proof before us, it could hardly be maintained that the company would not be liable. But it is insisted that the fact that she was at a private crossing, and was not going to the station, exempts it from liability. This would be true but for the fact that the private crossing was in a town where the presence of persons on the track was to be anticipated, and where the defendant was required to keep a lookout for them, and to give adequate notice of the approach of the train. It was peculiarly necessary that adequate notice of the approach of the train should be given, and that the speed of the train be such that the lookout would not be idle, as the train passed through the cut and emerged from a curve within the town, and so close to the station where the presence of persons on the track or about it was reasonably to be expected.

We, therefore, conclude that the court did not err in refusing to instruct the jury peremptorily to find for the defendant; but there was nothing in the evidence to warrant an instruction on punitive damages, and the court erred in submitting to the jury the question of punitive damages or of gross negligence. On another trial, in lieu of the instructions given the court will instruct the jury as follows: "(1) The court instructs the jury that if they believe from the evi-

dence that the track of the defendant in the town of
Barnsley at and about the pathway shown by the
Testimony was frequently and habitually used by the
public as a footway, with the knowledge and acquies-
cence of the defendant and was a place where the pres-
ence of persons on the track was to be anticipated,
then it was the duty of the defendant's agents, when
moving cars on that part of the track, to keep a look-
out for persons using it as a footway and to give rea-
sonable signals and warnings of the movements of its
cars when approaching said place, and to run its cars
and trains at such speed as ordinary care for the
safety of such persons required; and if the jury believe
from the evidence that the defendant's agents in
charge of its train mentioned by the witnesses negli-
gently failed to perform any of these duties in the
movement of said train of cars, and that by reason
thereof the plaintiff's intestate, Mary McNary, while
so upon the track at said place, was run upon and
killed by said train and that she was at the time using
ordinary care for her own safety the law is for the
plaintiff, and the jury will so find. If they find for the
plaintiff, they will award such a sum in damages as
they believe from the evidence will reasonably compen-
sate the estate of Mary McNary for the destruction of
her power to earn money. (2) A signal of the train's
approach was reasonable which was ordinarily suffi-
cient to give notice of its coming to persons who were
themselves exercising ordinary care for their own
safety and in possession of their ordinary faculties.
(3) Unless the defendant's servants in charge of the
train were negligent as defined in No. 1, the jury
should find for the defendant; and although there
was such negligence on the part of the defendant's
servants, yet if in going on the railroad track as she

did, the deceased failed to use ordinary care for her own safety, and but for this would not have been injured, then the jury will find for the defendant notwithstanding such negligence on its part." These instructions, with Nos. 4 and 5 given by the court defining negligence and ordinary care, cover the whole law of the case, and no other instructions are necessary.

On another trial the evidence in regard to the defendant's putting dirt on the top of the dump will be omitted.

Judgment reversed, and cause remanded for a new trial.