CASE 17.—SUIT BY JOHN YOCUM'S ADMINISTRATOR AGAINST THE CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY COMPANY.—December 10, 1909.

# Cincinnati, N. O. & T. P. Ry Co., &c. v, Yocum's Admr.

Appeal from Boyle Circuit Court.

M. C. SAUFLEY, Circuit Judge.

Judgment for plaintiff, defendants appeal.—Reversed.

1. Master and Servant—Death of Railroad Employe—Evidence Showing Contributory Negligence.—Evidence held to show that a railroad employe, killed in a collision with a train, while riding a tricycle in performing his duties as a block signal inspector, was guilty of contributory negligence.
2. Death—Death of Railroad Employe—Effect of Contributory Negligence.—If the death of a railroad employe, killed in a collision with a train while riding a tricycle, was caused by his own negligence, no recovery can be had because of the company's negligence, though suit is brought under the statute for the destruction of life; the only difference being that in such case the burden is on defendant to show contributory negligence.

CHAS. H. RHODES, JOHN GALVIN and GEO. E. STONE for appellants.

ROBERT HARDING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On December 15, 1906, about 4:45 p. m., John Yocum, an employe of the Cincinnati, New Orleans & Texas Pacific Railway Company, while riding a tricycle about one and one-half or two miles north of Danville and near block signal posts 112-1, was struck by the locomotive of a passenger train and killed. Yocum had been at a place called the "SJ tower" during the afternoon, and was on his way from the tower to Danville. This tower in charge of an operator was at the junction. of the Cincinnati, New Orleans & Texas Pacific Railway and the Southern Railway, and was supplied with telephone and telegraph instruments that furnished quick and easy communication with Danville and other points. Yocum was a signal inspector, and his duties required him to look after and keep in working order the block signals that were used on the appellant company's road. The section on which he worked extended a distance of some seven miles, embracing the road between the tower and Danville, and he was permitted to ride a tricycle in going over it. The train that struck Yocum was the first section of regular passenger train No. 2, going to Cincinnati. It was due to leave Danville at 4:20 p. m., but did not leave until 4:44 p. m.

A regular train of the Southern Railway Company for Louisville was also due to leave Danville at 4:45, and it ran over the same track as the Cincinnati train to the SJ tower, at which point it took the railway to Louisville. In this action by the administrator of the deceased to recover damages for his death, the negligence complained of is the failure to have a headlight burning on the engine, which was running

at a high rate of speed.  In its answer the company
denied all the material averments of the petition, and
affirmatively pleaded that the death of Yocum was
caused by his own negligence.  Upon a trial before a
jury, a verdict was rendered in favor of the appellee
for $9,900.  The judgment upon this verdict we are
asked to reverse: (1) Because the court refused to
direct the jury to return a verdict for the company;
(2) for errors in giving and refusing instructions;
and (3) for error in admitting and rejecting evi-
dence.

There is evidence that when Yocum left the tower
he said he was going to make some repairs, and then
go to his home in Danville; but that the repairs were
not urgent or essential is manifest from the fact that
Yocum remained in the tower from 1 o'clock until
about 4:30 in conversation with the operator.  He
was killed about one-half mile south of the tower
and between it and Danville, and the train that struck
him was running at a high rate of speed.  There is
much conflict in the evidence as to whether or not the
electric headlight on the engine was burning before
or at the time Yocum was struck.  Several witnesses
who were in a place to observe whether it was burn-
ing or not said it was not, while the trainmen said it
was.  The argument is made for the appellee that, if
the headlight had been burning, Yocum, who had the
right to be on the track, could have seen it in time to
have gotten off, but that, as it was raining and the
evening dark, he could not, in the absence of a head-
light, discover the approach of the train until it was
too late to avoid a collision; but, passing this ques-
tion, counsel for the company insist that, when Yo-
cum started on his way south to Danville from the
tower, the red signal light located between the tower

and Danville, and which Yocum was approaching and in plain view of when killed, was burning—thus indicating that a train coming north was in the block between the signal tower and Danville—and, further, that when Yocum left the tower he knew, or should have known from his knowledge of the movement of the trains, that a train would meet him.

From these facts it is argued that Yocum, who knew what these signals meant, and whose duties required him to observe them, and who was also obliged to keep note of the running of trains, was guilty of such contributory negligence in starting towards Danville on his tricycle and in remaining on the track as to defeat a recovery. We regard the question whether or not the red signal light was burning at the time Yocum left the tower, and when he came near it on his way to Danville, and his notice of the running of the train that struck him, as decisive of this case, and shall, therefore, examine with care the evidence relating to these points. Yocum had been in the service of the company as signal inspector on the division he had charge of when killed for about six years, and he was necessarily well acquainted with the movements of all trains on it. The evidence is ample that he was well posted concerning his duties and the rules of the company relating to them.

There is no doubt whatever that the red signal light at 112-1 was burning when Yocum left the tower and when he approached it, and that it could be plainly seen by him some time before he reached the point at which he was killed. This is the undisputed evidence. There is not a suggestion in the record to the contrary. That the train that struck him set this light red when it entered on the block near Danville is also

free from doubt. That only a train in the block could set it, and that this train when it entered the block would set it, is not questioned;, but the point is made by counsel for appellee that it was probably set by the yard engine at Danville. This assumption is based on some evidence to the effect that occasionally the yard engine in switching cars went in on the block, and when it did it would set this signal light; but there is a total absence of evidence to show that the yard engine went in on the block at the time in question, and the only evidence on the subject is to the effect that it did not.

Upon the question of the movement of this train, the evidence is unchallenged that it was regularly due in Danville at 4:20; but on this day it was 20 minutes late, and did not get there until 4:40, or leave until 4:44. Yocum was in the tower when this train, if on time, should have passed there about 4:25. He knew its time, knew, or must have known, it had not passed. Before he left the tower between 4:30 and 4:45, if he had desired to inform himself of the whereabouts of this train, he could have easily called up from the tower the Danville office on either the telegraph or telephone; but he did neither, nor did he seek from the operator any information as to the train. He also must have known that the passenger train on the Southern road that used the tracks of the appellant company from Danville to the tower was due to leave Danville 10 minutes after the departure of the Cincinnati train. If the Cincinnati train had left Danville on time, the Louisville Southern train would have left there at 4:30; but, as the Cincinnati train was delayed, the Louisville train did not leave until a few minutes after the Cincinnati train, and, when the Cincinnati train stopped for the

purpose of taking up the remains of Yocum, the Louisville Southern train came in behind it.

The rules promulgated by the company for the government of Yocum, and with which he was well acquainted, required him to keep informed as to the movements of all overdue trains, and the time of the regular trains, as well as the presence of extra trains upon the track that he was about to use. It was his duty to provide himself with a red flag and torpedoes, and at night to display a red and white light while on the track. If he saw a red signal light, which would indicate that there was a train approaching from the opposite direction, it was his duty to remove his tricycle from the track and look and listen, and if there was no sound to indicate an approaching train to proceed on foot to the signal and examine it and see if it was in proper working order. All the facts and circumstances point to the conclusion that Yocum never got off the tricycle from the time he started until he was killed. There is no evidence whatever conducing to show that he observed the rule requiring him to get off and walk when he saw the red signal, or that he looked or listened for an approaching train, although it is perfectly manifest that, had he observed this rule, no misfortune would have befallen him. The fact that under the rules he might exercise a reasonable discretion in this particular does not relieve him from negligence. The record does not disclose any reason or excuse for Yocum's conduct in going on the track in the face of the train that he knew was then past due, or for his failure to observe the rules prescribing his duty when he saw or could have seen the red signal light. No emergency call or demand in the line of his duty made it necessary that he should leave the tower

when he did. There is no evidence that any of the lights needed attention. On the contrary, the proof shows that they were burning; but he said to the operator as he left the tower that "he had about 10 minutes' work to do." What this work was does not appear; but we will assume that it had some connection with his duties.

From the undisputed facts we have stated, we see no escape from the conclusion that the peremptory instruction requested at the close of the evidence should have been given. In reaching this result, we do not treat Yocum as a trespasser, but as one who had a right, while observing the rules, to be upon the track with his tricycle. We also assume that the company was guilty of negligence in failing to have its headlight burning; but its negligence in this particular—and it is the only negligence complained of —will not save the case for the appellee. It has been repeatedly written that, if the injury or loss complained of by a person seeking a recovery in cases like this was caused by his own negligence, it will defeat a recovery, although the person committing the injury may also have been negligent. This principle is so familiar that it is unnecessary to do more than cite authority in support of it. Hummer v. L. & N. R. R. Co., 128 Ky. 486, 108 S. W. 885, 32 Ky. Law Rep. 1315; L. & N. R. R. Co. v. McNary, 128 Ky. 408, 108 S. W. 898, 32 Ky. Law Rep. 1266, 17 L. R. A. (N. S.) 224; L. & N. R. R. Co. v. Mounce, 90 S. W. 956, 28 Ky. Law Rep. 933.

Nor does the fact that the action was brought under the statute for the destruction of life change this rule. The only difference is that in such cases the burden is upon the defendant to show the contributory negligence that is relied upon to defeat a re-

covery. As said in the Mounce Case: ''If the plain-
tiff adduces any evidence at the trial tending to sus-
tain a cause of action set out in the petition, the case
will be sumbitted to the jury. This rule, however, is
subject to the qualification that if the defendant's
evidence is uncontradicted, and, being so, established
a defense, which notwithstanding the case made by
the plaintiff precludes a recovery by the plaintiff as
a matter of law, the court must tell the jury that a
recovery can not be had. This is not where the de-
fendant's evidence tends to refute plaintiff's, nor can
it apply even though the court may believe that de-
fendant's evidence completely overcomes plaintiff's
evidence. If the evidence upon each side is directed
to the same fact, or to the same set of facts, and is
conflicting, from which the jury might infer the truth
to be either with the plaintiff or the defendant, the
issue is for the jury to decide. Where, however, the
defense is a plea in avoidance, and the evidence clear-
ly sustains it, there being no conflict of evidence upon
the point, then there is no fact at issue. The ques-
tion is reduced to a pure question of law, which is
for the court always. The motion for a peremptory
instruction at the conclusion of all the evidence
should have been sustained.

Wherefore the judgment is reversed, with direc-
tions for a new trial in conformity with this opinion.

RESPONSE TO PETITION FOR REHEARING BY JUDGE HOB-
SON:

Before the opinion was delivered in this case three
members of the court read the record. On petition
for rehearing two other members of the court have
read it. The case has been carefully reconsidered by

the whole court. We are of opinion that upon the undisputed facts the deceased was clearly negligent in going upon the tracks as he did, and but for this negligence on his part the unfortunate injury to him would not have occurred. Petition overruled.