CASE 5.—ACTION BY ROBERT MILTON'S ADMINISTRA-
TRIX AGAINST THE FRANKFORT & VERSAILLES
TRACTION COMPANY.—June 17, 1910.

# Milton's Admx v. Frankfort & Versailles Traction Co.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1.   Master and Servant—Injuries to Servant—Fellow Servants—
Street Railway Motorman.—Motormen of colliding cars of a
street railway system, though employed by the same com-
pany, are not fellow servants so as to preclude a recovery for
injuries to one by the negligence of the other.

2    Master and Servant—Injuries to Servant—Fellow-Servant
Rule.—In Kentucky there are two exceptions to the rule that
all employes of a common master engaged in a common pur-
suit are fellow servants, viz., where a servant is injured by
the gross negligence of another servant superior in au-
thority to him, and where he is injured by the negligence
of another servant in a different department or grade of
employment.

3.   Master and Servant—Death of Servant—Street Railway Col-
lision—Contributory Negligence.—M., a street railway motor-
man operating a car ahead of that operated by decedent, left
the car barn on time at 6:10 a. m., on the morning of the ac-
cident. After proceeding 1,300 feet from the barn at about 8
miles an hour, he discovered he had forgotten his fare box
and started to return to the barn to procure it, having been
out 3 1-2 minutes. Decedent's car was not due to leave the
car barn until 6:17, but decedent on going to the barn dis-
covered that M. had left his box, and so he took the box and
started to deliver it to M. at a point where he expected to
meet him at 6:17. There was a heavy fog, and M. reached
the point of collision not later than 6:14 1-2 a. m.; the cars

coming together with great force and so injuring decedent that he died. Held that, notwithstanding his negligence, decedent was also negligent in leaving the barn ahead of his scheduled time, and hence there could be no recovery for his death.

SCOTT & HAMILTON, W. C. MARSHALL and J. H. FOLS-GROVE for appellant.

HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Robert Milton, a motorman in charge of one of appellee's cars, was injured in a collision which occurred on January 5, 1907, between his car and another of appellee's cars, and died the next day. His widow, Elizabeth Milton, qualified as his administratrix and brought this suit against appellee to recover damages for the death of the decedent. Among the pleas interposed by the answer of appellee was one to the effect that the decedent was a fellow servant of the motorman in charge of the other car. The trial court sustained a demurrer to this paragraph of the answer. Later on in the trial this action was reconsidered and the demurrer overruled. At the conclusion of all the testimony the jury was instructed peremptorily to find for appellee. From the judgment based upon this finding this appeal is prosecuted.

The facts in the case are as follows: Appellee's car barn and power house are situated on North Wilkerson street in Frankfort, Ky. From that point the three cars which were then in use were taken out in the morning by the motormen. There were no conductors on the cars; each motorman was in sole charge. The employes at the power house exercised

no control over the motormen, and had nothing to do with directing them when to start; their duty was to get the cars out of the barn and place them at the disposal of the motormen. Each motorman was furnished with a time-table or schedule which fixed the time of his departure from the barn and the time of his arrival and departure at the various meeting points in the city. Before departing on his run, each motorman would take with him his fare box. According to the schedule then in force, the time of departure from the barn of the three cars in use was as follows: The first car, which was in charge of a motorman by the name of Semones, left at 6:05 a. m.; the second car, which was in charge of a motorman by the name of McQuillan, left at 6:10 a. m.; the third car, which was in charge of the decedent, was due to leave at 6:17 a. m. On the morning of the accident there was a heavy fog, and it was possible to see only a short distance. McQuillan, whose car collided with that of the decedent, swears that he left the barn on time, at 6:10 a. m. After proceeding about 1,300 feet from the barn, at the rate of about 8 miles an hour, he discovered that he had forgotten his fare box. He brought his car to a stop, reversed the trolley pole with the assistance of a passenger, and proceeded on his way back to the car barn. On his return trip he ran his car at about 15 miles an hour. He states that when he discovered that his fare box was missing he had been out about 3 1-2 minutes. It was 7 minutes from the time of his departure until Milton was due to leave. As he was running at 15 miles an hour, he could return the 1,300 feet in about 1 minute. This would give him ample time to reach the car barn before the departure of Milton. He was due at Nor-

man's corner at 6:17 a. m. By proceeding at the same
rate, he would have reached that point on time. In
the meantime, Milton, on going to the barn, discov-
ered the fact that McQuillan had left his fare box.
He took the fare box and stated that he would deliver
it to McQuillan at Norman's corner, where McQuil-
lan was due to arrive at 6:17 a. m. James Montgom-
ery, the engineer at the power house, states that Mc-
Quillan had been gone 1 or 2 minutes when Milton
started. Ira Hulett, another employe at the car bar,
states that McQuillan had been gone 3 or 4 minutes
when Milton started. There is no conflict in the evi-
dence upon this point. When we consider the state-
ments of Montgomery and Hulett, in connection with
the statement of Milton, himself, that he would de-
liver the fare box to McQuillan at Norman's corner,
where McQuillan was due at 6:17 a. m., and in connec-
tion with McQuillan's statement that he had been out
of the bar only 3 1-2 minutes when he started on his
return trip, and that he must have reached the point
of collision within less than 4 1-2 minutes after 6:10
a. m., there can be no doubt that Milton departed
from the barn before he was scheduled to leave. At
the time of the accident, Milton was running his car
at 4 or 5 miles an hour. He did not reverse the cur-
rent prior to the accident. McQuillan says that he
could not see Milton's car on account of the fog. Sud-
denly he saw the light in front of him. He im-
mediately reversed the current and jumped from his
car in time to avoid serious injury, although he was
slightly injured. The cars came together with great
force. McQuillan's car was knocked from its trucks,
and the front of Milton's car was demolished. Mil-
ton was fatally injured, and died the next day.

We are inclined to the opinion that the court erroneously held that Milton and McQuillan were fellow servants. This court has never adopted the fellow-servant doctrine announced in the cases of Priestly v. Fowler, 3 M. & W. 1, 6, and 7, and Farwell v. Boston, etc., R. R. Co., 4 Metc. (Mass.) 49, 38 Am. Dec. 339. The courts following the rule announced in those cases have held all employes of a common master engaged in a common pursuit to be "fellow servants." In this state two exceptions to this rule have been recognized: First, where the servant is injured by the gross negligence of another servant superior in authority to him; second, where the servant is injured by the negligence of another servant in a different department or grade of employment. Following this rule, this court has held that employes composing the crew of one train are not fellow servants of the employes composing the crew of another train. Kentucky Central Ry. Co. v. Ackley, 87 Ky. 278, 8 S. W. 691, 10 Ky. Law Rep., 170, 12 Am. St. Rep. 480; C., N. O. & T. P. Ry. Co. v. Hill, 89 S. W. 523, 28 Ky. Law Rep. 530; L. C. & L. R. R. Co. v. Cavens, 9 Bush, 559. The reason for the rule is aptly stated in the case of Louisville & Nashville R. R. Co. v. Brown, 127 Ky. 732, 106 S. W. 795, 32 Ky. Law Rep. 552, 13 L. R. A. (N. S.) 1135, where the court said: "But when the servant is injured by employes of the same master, who are not directly associated with him, and with whom he is not immediately employed, and whose qualifications for the place they occupy he has no means of knowing, and in whose selection he has no voice, and over whose conduct and actions he has no control, and against whose negligence and carelessness he cannot protect himself, he may recover damages from the master

for injuries received through their negligence, wheth-
er it be ordinary or gross, and without any reference
to the position or place the servant causing the in-
jury holds.'' If this be the basis of the rule, we can
see no good reason why a distinction should be made
between employes on different trains and employes on
different street cars. Employes upon one car are
not directly associated with those upon another car;
they simply pass each other occasionally. Their
duties do not require immediate co-operation, and do
not bring them together or into such relations that
they can exercise an influence upon each other pro-
motive of proper caution. Louisville Ry. Co. v. Martin
Hibbitt (opinion delivered June 7, 1910) 129 S. W.
319, 138 Ky —. We therefore conclude that Milton
was not a fellow servant of McQuillan, who was in
charge of another car.

This ruling, however, is not conclusive of appel-
lant's right to recover. There is no evidence in the
case tending to show that Milton left on schedule
time. On the contrary, the testimony of the witnesses
and every circumstance of the case go to show that
he left the barn ahead of his schedule time, and was
running ahead of his schedule time at the place of
the accident. In doing this he was negligent, and as-
sumed the risk. As McQuillan had no reason to an-
ticipate that Milton would leave before his schedule
time, it is doubtful if he was negligent, either in re-
turning or in running his car at a high rate of speed,
so far as Milton, himself, was concerned. But ad-
mitting that McQuillan was negligent, the accident
would not have occurred had it not been for Milton's
negligence in leaving the car barn ahead of his sched-
ule time. The rule is well settled that, where the in-
jury complained of was caused by the plain-

tiff's own negligence, it will defeat a recovery, although the person committing the injury may also have been negligent. Hummer v. Louisville & Nashville R. R. Co., 128 Ky. 486, 108 S. W. 885, 32 Ky. Law Rep. 1315; Louisville & Nashville R. R. Co. v. McNary, 128 Ky. 408, 108 S. W. 898, 32 Ky. Law Rep. 1266, 17 L. R. A. (N. S.) 224. In such a case, however, the burden is upon the defendant to show the contributory negligence on the part of the plaintiff. Thus in the recent case of C., N. O. & T. P. Ry. Co. v. Yocum's Adm'r, 123 S. W. 247, it was Yocum's duty to keep informed as to the movements of all overdue trains and the time of the regular trains, as well as the presence of extra trains upon the track he was about to use. It was also his duty to provide himself a red flag and torpedoes, and at night to display a red and white light while on the track. If he saw a red signal light, which indicated that there was a train approaching from the opposite direction, it was his duty to remove his tricycle from the track and look and listen, and, if there was no sound to indicate an approaching train, to proceed on foot to the signal and examine it and see if it was in proper working order. The red signal light was in proper condition. The evidence showed that he failed to perform any of his duties with respect to that light. Notwithstanding the fact that there was some evidence tending to show that the headlight of the engine, which struck Yocum and killed him, was not burning, this court held that Yocum's own negligence would preclude a recovery. The principle therein announced is applicable to the facts of this case. The undisputed testimony shows that Milton was negligent in leaving the barn before his schedule time. Had he not done so, he would not have been

killed. There being no conflict in the evidence upon this point, the question is not one of fact, but of law to be determined by the court. Louisville & Nashville R. R. Co. v. Mounce, 90 S. W. 956, 28 Ky. Law Rep. 933.

We are of the opinion that the trial court properly instructed the jury to find for appellee.

Judgment affirmed.