CASE 13.—ACTION BY JULIA GILMORE'S ADMINISTRATOR AGAINST THE LOUISVILLE & NASHVILLE R. R. CO. FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—April, 1908.

# Louisville & N. R. R. Co. v. Gilmore's Admr.

Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

MATT O'DOHERTY, Judge.

Judgment for plaintiff.    Defendant appeals.—Reversed.

1. Railroads—Injuries to Pedestrian at Crossing—Negligence.— A railroad company, charged with the duty of keeping a lookout for pedestrians using a pathway across the track, is not negligent because the fireman withdrew his lookout to coal the engine, though the view of the engineer was cut off.

2. Same.—A railroad company, charged with the duty of keeping a lookout for pedestrians using a pathway across the track, was not negligent in failing to have a third person assist the fireman to keep a lookout while he was otherwise engaged, though the view of the engineer was cut off, since the lookout required is a reasonable one, and as good as the circumstances of the case will permit.

3. Same.—A trainman, seeing a pedestrian crossing a street and approaching a railroad track, has the right to presume that he will not step in front of the approaching train, and may act on such presumption until it becomes reasonably apparent from his manner that he intends to step on the track.

4. Same.—A pedestrian was struck by a heavy freight train running at about 15 miles an hour. The bell of the engine was being rung as the train approached the crossing where the accident occurred. The fireman observed, when the engine was 65 feet from the crossing, that the pedestrian was unconscious of the approach of the train, and would step in front of it. It was then a physical impossibility to stop the train to avoid the accident. Held, that the company was not liable.

## ON REHEARING.

Railroads—Injuries to Pedestrian at Crossing—Lookout—Negligence.—A railroad company charged with the duty of keeping a lookout for pedestrians using a highway across a track cannot discharge that duty otherwise than by keeping a lookout, and the fact that it became necessary to fire the engine at a time when the engineer could not see on account of a curve in the track would not excuse the failure so to do.

HELM & HELM, for appellant.

H. L. STONE and BENJAMIN D. WARFIELD, of counsel.

## POINTS AND AUTHORITIES.

### I.  Pleadings and Incompetent Testimony.

1.  Without any allegation whatever as to the use of a passway across the tracks, or defendant's knowledge thereof, evidence of such use is incompetent. (Gividen's Admr. v. L. & N., 17 R. 789; Embry's Admr., 18 R. 434; Brown v. L. & N., 97 Ky. 228; L., H. & St. L. Ry. Co. v. Woolfork, 30 R. 569; L. & N. v. Daniel, 28 R. 1146.)

2.  Upon the sole allegation of negligence on the part of those controlling the train, evidence was incompetent that the automatic alarms or crossing bells were out of order.   (Adams v. L. & N., 18 R. 164; L. & N. v. Clark's Admr., 20 R. 375; Greer v. L. & N., 94 Ky. 169; McCane v. L. & N., 13 R. 809; Big Sandy River Coal Co. v. Caudi'', 22 R. 1175; Chun v. K. & I. Bridge Co. 23 R. 1092; Davis v. Paducah Ry. Co., 24 R. 135; L. & N. v. McGarry's Admr., 104 Ky. 509.)

3.  Testimony that more precautions at nearby highways had

been provided subsequent to the injury was incompetent.    L. &
N. v. Morton, 28 R. 355.)

## II.  Instructions.

1. By Instruction 3, the court required greater and more
duties of the defendant than were imposed by law.  (Authorities
cited under II-6.)

2. The court's instructions required that the fireman be con-
stantly on the lookout ahead, when his chief duty was that of
putting coal in the engine.    (L. & N. v. Creighton, 106 Ky. 42.)

3. The court submitted questions to the jury, and authorized
a finding adverse to the defendant, upon which there was not a
scintilla of evidence to show negligence.    (11 Ency. of Plead-
ing & Practice, 170; McClain v. Esham, 7 B. M. 156; Stone v.
Menser, 6 B. M. 434; L. & N. v. Law, 14 R. 851; Insurance Co. v.
Hall, 15 B. M. 430; Newton v. Carson, 9 R. 476; Davis v. Mitchell,
18 R. 304; Buck v. Commonwealth, 15 R. 444.)

4. The form of the instructions was exceedingly prejudicial
to appellant.

5. The decedent's duty when endeavoring to cross the tracks
was not defined, only a principle of law being stated, viz., that it
was her duty "to exercise ordinary care for her own safety." As
to what was required of decedent was in no way intimated.
(Authorities cited under 6.)

6. The fourth instruction abolished the law of contributory
negligence by permitting a recovery if decedent's peril "could
have been discovered" when under the admitted facts the "last
clear chance" to avoid the injury was with decedent, and there
was no evidence tending to support the inference that her peril
could have been discovered in time    to avoid the    accident.
(Southern Ry. Co. v. Barber, 21 R. 226; L. & N. v. Cummings'
Admr., 111 Ky. 338; P. & M. R. Co. v. Hoehl, 12 Bush, 41; I. C. v.
Dick, 91 Ky. 434-441; Johnson v. L. & N., 91 Ky. 653; Wright v.
C. & O., 94 Ky. 120; C. & O. v. Gunther, 108 Ky. 362; Rupard
v. C. & O., 88 Ky. 280-5; L. & N. v. Sights, 28 R. 186; City of
Maysville v. Guilfoyle, 110 Ky. 673; L. & N. v. Fox's Admr., 20
R. 81; L. & N. v. Mount's Admr., 28 R. 936; Jacob's v. Ohio &
Big Sandy, 20 R. 198.)

7. Punitive damages should not have been permitted, as there
was no evidence of wanton or willful negligence.    (Lake Shore,
etc., v. Prentice, 147 U. S. 106; Steamboat "New World" v. King,
16 How. 474; Cooley on Torts, 3d Ed. 1324; Pollock on Torts,
star page 157; Moak's Underhill on Torts Reduced to Rules,
page 74; Jaggard on Torts, page 392; Sutherland on Damages,

Louisville & N. R. R. Co. v. Gilmore's Admr.

Vol. 1, page 724; Sedgwick on Damages, Vol. 1, Sec. 363; Shear-man & Redfield on Negligence, Vol. 2, Sec. 748; Thompson on Negligence Rules, pages 898-9; Watson's Damages for Personal Injury, page 853, Sections 719-22; 12th Am. & Eng. Ency. of Law, page 28; Cyc., Vol. 13, page 105; Owings v. Ulory, 13 A. K. M. 454; Major v. Pulliam, 3 Dana, 582; Parker v. Jenkins, 3 Bush, 587; L. & N. v. Robinson, 4 Bush, 509; McCoy v. L. & N., 81 Ky. 411; Jacobs v. L. & N., 10 Bush, 273; Claxton v. Big Sandy, 13 Bush, 642; McHenry Coal Co. v. Snedden, 98 Ky. 688; L. & N. v. Kingman, 18 R. 83; Hendricks v. Singer Mfg. Co., 20 R. 1089; Lexington Ry. Co. v. Fayne, 25 R. 2245; Southern Ry. Co. v. Goddard, 18 R. 527; Southern Ry. Co. v. Hawkins, 28 R. 366.)

8. The verdict for damages to the decedent's estate by reason of the destruction of her power to earn money was unauthorized and excessive. (L. & N. v. Elkin's Admr., 103 Ky. 468-476.)

FORCHT & FIELD and DODD & DODD, for appellee.

POINTS AND AUTHORITIES.

1. Appellant was not entitled to judgment notwithstanding the verdict in the lower court.

(a) The petition was not defective or insufficient. (Ill. Cent. R. R. Co. v. Murphy's Admr., 97 S. W., 729; 30 Ky. L. R., 93; L. & N. v. Wolf, 80 Ky., 82; L. & N. v. Mitchell, 87 Ky., 327; L. & N. v. Victor, 104 Ky., 509; C. & O. v. Davis' Admr. 104 Ky. 608; Embry v. L. & N., 18 Ky. L. R., 434; Connell v. C. & O., 22 Ky. L. R., 501; Conley's Admr. v. C. N. O. & T. P., 89 Ky., 412; L. & N. v. Popp, 96 Ky., 99.)

(b) Assuming that the petition was defective or insufficient, any defect or insufficiency was cured by the answer, trial and verdict. (Hill v. Ragland, 114 Ky., 218; Riggs v. Maltby, 2 Metc., 90; Forsythe v. Ellis, 4 J. J. M., 302; Daniel v. Holland, 4 J. J. M., 21; Drake's Admr. v. Semonin, 82 Ky., 291; Escott v. White, 10 Bush, 169; Railroad v. Thieman, 96 Ky., 510; Evans v. Stone, 80 Ky., 70; Wilson v. Hunt's Admr., 6 B. M., 379; Rogers Felton, 98 Ky., 150; Mast v. Lehman, &c., 100 Ky., 466; Railroad v. Copas, 95 Ky., 460; Railroad v. Lawes, 21 Ky. L. R., 1793; Assurance Co. v. Ray, 105 Ky., 523; C. & O. v. Thieman, 96 Ky., 507; C., St. L. & N. O. v. Hollis Admr., 28 Ky. L. R., 1102; Dunekake v. Beyer, 25 Ky. L. R., 2001 & cases; Newman, Pleading & Practice, 739; L. &. N. v. Lawson, 88 Ky., 496; Pugh v. White, 78 Ky., 210; Hickman v. Southerland, 4 Bibb, 194; Hocker v. Davis, 2 F. B. M., 118; Aiken v. Gooch, 7 Ky. L. R., 100; Rogers v. Felton, 98 Ky., 148.)

(c) Assuming that the petition was defective or insufficient, appellant waived the right to enter or rely upon a motion for judgment notwithstanding the verdict. (L. & N. v. Copas, 95 Ky., 460; Mast, &c. v. Lehman, 100 Ky., 464.)

2. The instructions were more favorable than the appellant had the right to demand. There were no errors in the admission of evidence. Mrs. Gilmore was not guilty of contributory negligence; and appellant was not entitled to peremptory instructions. (Ill. Cent. v. Murphy's Admr., 30 Ky. L. R., 93; L. & N. v. Creighton, 106 Ky., 42; Ill. Cent. v. Hays, 84 S. W., 388; East Tenn. C. Co. v. Henshaw, 16 Ky. L. R., 526; L. & N. v. Popp, 96 Ky., 99; Shelby's Admr. v. C. &c. R. R. Co., 85 Ky., 224; Conley v. Railroad, 89 Ky., 402; L. & N. v. Cooper, 23 Ky. L. R., 1658; Crowley v. L. & N., 21 Ky. L. R., 1434; L. & N. v. Schuster, 10 Ky. L. R., 65; L. & N. v. Howard, 82 Ky., 215; L. & N. v. Hoehl, 10 Bush, 50; K. C. v. Smith, 93 Ky. 449; West Ky. T. Co. v. Pharis, 25 Ky. L. R., 1838; Carlisle v. Secrest, 75 S. W., 236; Mayfield v. Guilfoyle, 65 S. W., 493; Lancaster v. Walter, 25 Ky. L. R., 2189; Newport v. Miller, 12 K. L. R., 422; Fordville v. Spincer, 23 Ky. L. R., 1260; Louisville v. Brewer's Admr., 24 Ky. L. R., 1671; Midway v. Lloyd, 24 Ky. L. R., 2448; McCabe's Admr. v. I. C., 89 S. W., 683.)

3. If the "lookout" rule means anything, one of two things is inevitably true: either the fireman was grossly negligent in coaling his engine at the particular time when the engineer could not see, or appellant was grossly negligent in not having some third person to keep a look-out when the engineer could not see and the fireman was engaged elsewhere. (Ill. Cent. v. Murphy's Admr., 30 Ky. L. R., 93; Davis v. L. H. & St. L., 30 Ky. L. R., 172; C. & O. v. Nipp's Admr., 30 Ky. L. R., 1131.)

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

T. M. Gilmore, administrator of Julia Gilmore, instituted this action against appellant, Louisville & Nashville Railroad Company, to recover damages for the death of Julia Gilmore, which is alleged to have resulted from the negligence of appellant. From a judgment for $5,000 in favor of appellee, this appeal is prosecuted.

The death of Mrs. Gilmore occurred under the fol- ·

lowing circumstances: Appellant maintains double tracks between Louisville and Cincinnati which, in the former city, parallel Frankfort avenue, a public thoroughfare, for a distance of about two miles, the street being on the south and the tracks on the north. Running northwardly from Frankfort avenue and crossing appellant's tracks are various public streets. One of these streets—Bayly avenue—which is located about three-fourths of a mile within the eastern limits of Louisville, extends from Frankfort avenue two squares northward to Field avenue. At the time of the accident double tracks were also maintained on Frankfort avenue by the Louisville Railway Co. These tracks, at a point opposite Bayly avenue, merge into a single track, which thereafter continues eastwardly for several hundred feet, and then changes into a double track opposite Crescent avenue. About 160 feet west of Bayly avenue is an alley extending from the north to the right of way of appellant on the south, and opening thereon. Immediately opposite the mouth of this alley, and on the south side of Frankfort avenue, is Moore's drug store. At the time of the accident there was a plank opposite the mouth of the alley, which led across a ditch on the north side of appellant's right of way. On the south side of appellant's right of way there was a ditch, across which a log or cross-tie was placed. Beginning at a point some 200 or 300 feet east of Bayly avenue the tracks of appellant describe a curve, the outer rim being to the north and ending between Bayly avenue and the alley. On the line between Frankfort avenue and the right of way are telephone, telegraph, electric light, and trolley poles. The street is slightly elevated above the tracks. At a point about 1,000 feet east of the place of the accident the elevation is about 5 feet.

The death of Mrs. Gilmore occurred about 5 o'clock on the afternoon of July 4, 1905. The testimony shows that she left the rear of her premises and crossed the tracks of appellant and Frankfort avenue, and went to Moore's drug store on the south side of Frankfort avenue. Leaving the drug store, at which time it was broad daylight, she allowed an interurban car of the Pewee Valley line to pass. At the time there was a Fourth of July picnic in progress at a Catholic institution in the neighborhood, and a great many street cars of the Louisville Railway Company were passing to and fro. Children of the neighborhood were shooting firecrackers and torpedoes on the sidewalk and in the street adjacent to the drug store, and considerable confusion prevailed. Mrs. Gilmore walked rapidly across the street, a distance of 64 feet; then 20 feet more on to the first or southermost track of appellant; thence 10 feet more, close to, but not on, the second track, where she was struck. The train that struck Mrs. Gilmore was a freight train consisting of an engine, 22 loaded and 2 empty cars, and a caboose. It was on time, and was running about 12 to 15 miles per hour. When the accident occurred the engineer was keeping a lookout, and the bell of the engine was ringing. The fireman was also on a lookout until the engine was within a few feet of Bayly avenue. After looking ahead and seeing no one either on or approaching Bayly or Hite avenues, he stepped down in the deck to put coal in the furnace. As he ceased shoveling and stepped to the gangway he saw the body of Mrs. Gilmore fall from the pilot beam. He then notified the engineer, and the train was stopped.

The evidence conduces to show that the pathway leading from the mouth of the alley across appellant's tracks to Moore's drug store had been used by the

public for such a length of time as to raise the presumption of knowledge or acquiescence on the part of appellant. It is not contended that the engineer saw, or could have seen, Mrs. Gilmore in time to prevent the accident, for, being on a curve, his view to the left was cut off; but it is contended that it was the duty of appellant to keep a lookout for persons using the pathway in question, and that the negligence of appellant consisted in the fireman's withdrawing his lookout at a time and place where the lookout by the engineer was practically of no avail. Assuming that the evidence was sufficient to impose upon appellant the duty of keeping a lookout at the place of the accident, was it negligence on the part of the fireman to coal the engine under the circumstances? From the evidence in the case it appears that one of the principal duties, if not the chief duty, of the fireman, is to fire the engine. Schedules must be maintained and trains run on time. Otherwise the safety of the passengers and employes would be greatly imperiled. In order that trains may keep their schedules and run on time it is absolutely necessary that the engine be properly coaled. We are unable, therefore, to say that, because the fireman withdrew his lookout for the purpose of performing another duty equally important and necessary, the appellant was guilty of negligence. Louisville & Nashville Railroad Company v. Creighton, etc., 106 Ky. 42, 20 Ky. Law Rep. 1691, 50 S. W. 227. Nor do we think it negligence on the part of appellant not to have had a third person present to assist in keeping a lookout when the fireman was otherwise engaged. The lookout required by law is a reasonable one to be kept by those in charge of the engine. Because of the condition of the tracks, or of the fact that obstructions sometimes intervene, it may

be that such lookout will not always be perfect; but all the law requires, or should require, is that it shall be as good as the circumstances of the case will permit. To require an additional person to keep a lookout when the fireman is engaged in coaling the engine would be to place almost the entire responsibility for accidents on the railroad company. The law does not go to this extreme. There is no liability where those charged with the duty of keeping a lookout keep such a lookout.

But even assuming the extreme position that it was negligence on the part of the fireman to stop keeping a lookout while he fired the engine, the appellee could not recover unless Mrs. Gilmore's death was due to such negligence. The evidence shows that the train was running about 15 miles an hour. Mrs. Gilmore was walking rapidly across the street and tracks, moving at the rate of 3 miles an hour. If the fireman then had been upon the lookout and had seen Mrs. Gilmore crossing the street, he would have had the right to presume that she would not step in front of the approaching train until it became reasonably apparent from her manner that she intended to do so. Ford's Admr. v. Paducah City Railway, 90 S. W. 355, 30 Ky. Law Rep. 644, 8 L. R. A. (N. S.) 1093; Johnson's Admr. v. Louisville & Nashville Railroad Co., 91 Ky. 651, 25 S. W. 754. There was a space of 13 feet between the north and south bound tracks of appellant. When Mrs. Gilmore reached the south rail of the north-bound track she was 13 feet from the south rail of the south-bound track. The engine was then about 65 feet distant. If the fireman had seen her at this point, and it was then reasonably apparent that she was unconscious of the approach of the train, he would then have had to call the attention of the engi-

neer to the fact, and the engineer would then have had to blow the whistle or stop the train in time to have prevented the accident. This, we think, would have been a physical impossibility.

It may be that the accident happened because of Mrs. Gilmore's deafness, or it may be that her mind was so intent upon something else, or that her attention was so absorbed, that she failed to notice the approaching train. It was her misfortune that she failed to hear it. It was a large freight train, consisting of 24 cars and a caboose. The bell on the engine was being rung, the train itself was making a loud noise, and the slightest care on her part would have enabled her to escape danger. The accident, deplorable and unfortunate though it was, was not due to any negligence on the part of appellant. It is simply a case of one's walking in front of an approaching train at a time when no diligence or effort on the part of those in charge of the train could have discovered or prevented her peril.

We are, therefore, of the opinion that the trial court should have peremptorily instructed the jury to find for appellant. No other questions raised on this appeal are decided.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.