## Louisville & Nashville Railroad Company v. Asher's Administrator.

(Decided November 27, 1917.)

### Appeal from Laurel Circuit Court.

1. Railroads—When Under Duty to Give Notice to Sectionmen of Change in Course of Traffic from One Line of Double Track to Another.—When a gang of sectionmen or other employes of a railroad company are engaged in a special line of work at a particular place where the company has a double line of track, on one of which south-bound trains habitually run and on the other north-bound trains, and it has notice that the men are so engaged at this place, it is under a duty, if it changes its trains from one of its tracks to another, to either give notice to the foreman of the crew of the change in the course of its traffic or to notify the engineers to reduce the speed of trains at this place and proceed with caution.

2. Railroads—Negligence—Duty to Notify Sectionmen of Change in Course of Traffic.—Where a crew of sectionmen were engaged in removing dirt from a track on which south-bound trains habitually ran, and one of the men was killed while on the north-bound track by a south-bound train running at a high rate of speed, the company was guilty of negligence in failing to give notice to the men of the change in the course of its traffic or in

failing to notify the engineer to reduce the speed of his train
and proceed with caution at this place.

3. Appeal and Error—Instructions—Harmless Error in.—An instruc-
tion on the measure of damages, although erroneous because it
did not advise the jury to fix the damages at a sum that would
represent the present cash value of the assessment, was not
prejudicial in view of the small amount of damages awarded.

GEORGE G. BROCK, H. J. JOHNSON and BENJAMIN D. WAR-
FIELD for appellant.

BROCK & BROCK and SAM C. HARDIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

While employed as a section hand and working with
a gang of men for the appellant company in Kenton
county, Robert Asher was struck and killed by a pas-
senger train of the company, and in this action under
the Federal Employers' Liability Act by his adminis-
trator to recover damages for his death, there was a
judgment against the company for two thousand dol-
lars, and it appeals.

The evidence shows that Robert Asher, who was an
industrious young man of good habits, 19 years old, had
been working for the railroad company as a section hand
for several months in each year for two or three years;
that on each pay day he sent to his mother, who was old
and dependent, a reasonable part of his wages to help
her.

The facts surrounding his death are substantially as
follows: At the place he was killed, and for some miles
on either side thereof, the railroad company had a double
line of main track. One of these tracks was called the
north-bound track, on which all trains going north ha-
bitually ran, and the other track was called the south-
bound track, on which all trains going south habitually
ran.

On the day Robert Asher was struck and killed the
crew of sectionmen with which he was working were
engaged at a place where there was a sharp curve in
removing some dirt that had fallen from an embankment
on the south-bound track. While they were so at work
the foreman directed Asher to go north on the tracks a
distance of a hundred yards or more to a pile of lumber
and get a plank that was needed in connection with the
work, and Asher, pursuant to the orders of his foreman,
went to the pile of lumber, got the plank, and was walk-

ing south on the north-bound track to where the men were, carrying the plank on his shoulder. He had walked only a short distance from the lumber pile when a south-bound passenger train, running on time and on the north-bound track, at a speed of about 45 miles an hour, struck and killed him.

No notice or warning of any kind had been given to the foreman of the section crew or any of the men that south-bound trains would use the north-bound track, and there is evidence that about half an hour before Asher was killed a train passed this place going south on the south-bound track, while no south-bound trains except the one that killed him had used the north-bound track, and also evidence that the section foreman had sent a flagman north of this landslide, before the arrival of this fast passenger train that killed Asher, to warn this train to use caution in running by this place on the south-bound track, as he supposed this train would run on this track.

The engineer of the train that killed Asher testified that he had received orders at a station some miles north of this place to use the north-bound track in going south on account of this landslide; that a sharp curve in the track prevented him from seeing Asher until he was within a few feet of him; that when he did discover the presence of Asher on the track, he sounded the alarm whistle and used every means in his power to stop the train before striking him, but could not do so.

On this evidence the only negligence, if any, of which the company was guilty consisted in its running a south-bound train at a high rate of speed, at a place where these men were working, on a track that had been set apart for and was used exclusively by north-bound trains, without giving warning or notice to the sectionmen engaged in removing the landslide of the fact that on this day this fast south-bound passenger train would use the north-bound in place of the south-bound track, as the evidence makes it plain that the death of Robert Asher was caused by changing this train from the south-bound track, on which it was usually run, to the north-bound track, without giving the sectionmen any notice of the change, or by the failure of the engineer to reduce the speed of the train and proceed with caution at the place where the men were at work.

At this point we may stop to say that there seems to have been some difficulty in making up a correct bill of evidence, and consquently it does not clearly appear

how long these men had been working at this landslide or what the flagman who was sent out by the foreman did. But there is enough in the evidence to show: (1) That there was a landslide on this curve that obstructed, at least to some extent, the use of the south-bound track; (2) that a train going south used the south-bound track about half an hour before Robert Asher was killed; (3) that the railroad company knew of the landslide on this curve and that the sectionmen were engaged in removing it; (4) that this train that killed Asher was the only south-bound train that had used this north-bound track; (5) that if the foreman of the section crew or Robert Asher had known that this south-bound train was going to use the north-bound track, or if the engineer had reduced at this place the speed of his train and proceeded with caution, Asher would not have been struck or killed; (7) that Asher heard the train some time before it struck him and in ample time to have stepped from the track to a place of safety, but under the belief that the train he heard coming was on the south-bound track, he felt entirely safe in remaining on the north-bound track.

On these facts it is earnestly insisted by counsel for the railroad company that there should have been a directed verdict in its favor, because, as it is argued, the railroad company had the right at any time to change any of its trains from one track to the other, and to run them without any reduction in speed, and without giving notice of the change to sectionmen who must themselves look out for and keep out of the way of passing trains, and this being so, the death of Asher was due to his negligence in remaining on the north-bound track after he heard the train coming and when he had ample time to step from the track to a place of safety.

On the other hand, it is the contention of counsel for Asher that under the facts as we have stated them the railroad company was under a duty to have given notice to this section crew of the fact that it would on this day change its usual course of traffic and run its south-bound trains on the north-bound track, or to have notified the engineer in charge of this train to reduce the speed of his train in approaching this place and proceed with caution, and that if either of these courses had been pursued, Asher would not have been killed.

In Coleman's Admr. v. Pittsburg, etc., Ry. Co., 139 Ky. 559; Conniff v. Louisville, Henderson & St. L. Ry. Co., 124 Ky. 763; C., N. O. & T. P. Ry. Co. v. Swann's Admx., 160 Ky. 458; Wickham's Admr. v. L. & N. R.

R. Co., 135 Ky. 288; L. & N. R. R. Co. v. Hunt's Admr.,
et al., 142 Ky. 778; Blankenship's Admr. v. Norfolk &
Western Ry Co., 147 Ky. 260; and C., N. O. & T. P. Ry.
Co. v. Harrod's Admr., 132 Ky. 445, as well as in many
other cases, we have written that a railroad company
is not under a duty to reduce the speed of its trains for
the protection of, or give warning to, track walkers or
other employes whose duty it is to look out for trains
and protect the track, saying that the only duty it owes
this class of employes is that of exercising ordinary care
to protect them from danger after their peril is dis-
covered.

But the principle announced in these cases has no
controlling application to the facts of this case, nor have
we been able to find in the decisions of this court any
case presenting the question that is before us on this
record. The nearest approach is Boulden v. Louisville
& N. R. Co., 112 S. W. 936. In that case it appears that
Boulden, who was not an employe, was walking south
between two main tracks of the railroad company at a
place in Covington where the tracks were used by a large
number of people. To avoid an obstruction between the
tracks where he was walking he stepped on the east
track and was proceeding south on his journey, when
struck by a train going south on this east track. It
further appeared that trains going south regularly ran
on the west track, but on this occasion that track could
not be used, and so the trains going south were using
the east track, which was unusual, although it sometimes
happened that south-bound trains would be run on the
east track. In holding that the company had the right
to change the course of its traffic without giving notice
or warning thereof to persons who were licensees, and
had the right to use the tracks at the place where Boulden
was struck, the court said:

"The trial court properly instructed the jury that
the defendant had the right to use either track, as oth-
erwise they might have thought it negligence for the
company to run the train in question on the east track.
Persons who walk along a railroad track are under ob-
ligations to keep out of the way of trains, and they can
not complain that the train is run on one track and not
on another."

But it will at once be seen that the facts of that case
are very different from the facts of this one, and the
statement of the court, that the company had the right
under the facts of that case to use either of its tracks as

best suited its convenience, without reducing speed, or proceeding with caution, or giving warning of the approach of the train, is not authority supporting the argument that the company was not guilty of negligence in this case.

The subject has also been considered by the courts of other states, although in few, if any, of the cases were the facts upon which the decision was rested like the facts appearing in this record. We may also here observe that the question whether or not a railroad company is under a duty to give notice to its track employes, or reduce the speed of its trains for their protection when it changes the regular course of its traffic, is such a close one that it is important to have a clear understanding of the facts, in order that it may be determined whether the case in hand falls in that class holding that the company may, without notice or warning to its track employes, or reduction of speed, change its traffic, or in that class holding that it is under a duty to give notice or warning to track repairers, because there are classes of cases in which it is under a general duty to give notice to track repairers and other employes when they are engaged in special or unusual work at places where notice of the approach of trains is necessary to avoid injury to them, or where they are engaged in employments that do not impose upon them the duty of looking out for the approach of trains. Examples of this class of cases are: L. & N. R. R. Co. v. Lowe, 118 Ky. 260; Cason's Admr. v. Covington, etc., R. R. Co., 29 Ky. L. R. 352; L. & N. R. R. Co. v. Taylor's Admx., 158 Ky. 633.

We are also quite sure, although we have not been able to find any case that may be said to be directly in point, that a railroad company might, without negligence, change its course of traffic and use either of its tracks, without reduction in speed or notice to that class of its employes who are under a duty to look out for the movement of trains. Cases that may be said to support this principle are the Coleman, Conniff, Swann, Blankenship and Harrod cases heretofore referred to. Another case illustrating the view held by some courts that a carrier may without negligence change its course of traffic is Imler v. Northern P. R. Co., 89 Wash. 427, L. R. A. 1916D., p. 702. In this case Imler, while walking along the track of the railway company, was struck and killed by one of its trains. At the place where he was killed the company had a double line of main track, and these tracks were used by such a number of the public as to

convert Imler into a licensee with the corresponding duty upon the part of the company to anticipate his presence. In that case the principal ground of negligence charged was that the company, without notice or warning to the public, changed its south-bound trains from the west track, on which they were habitually run, to the east track; and the court held that the company "cannot be held guilty of negligence if, in the performance of its functions as a public carrier, it suspends its own rules for the time being for the movement of its trains and sends a train forward against traffic. We might as well hold that a train running ahead of time or behind time would have to flag its way to protect those who were accustomed to use its tracks as a footpath in country districts."

Another is Morgan v. Northern Pacific Ry. Co., 196 Fed. 449, where a licensee, while traveling on one of two parallel main tracks of the company was killed by being struck by a train that customarily ran upon the other track, but which on this occasion was directed to take the track on which Morgan was walking. In holding that the company had the right to use either of the tracks, the court said: "Which of the tracks would or should be used for its various trains was, of course, a matter for the exclusive determination of the railroad company." But it appears from the opinion that the court was largely influenced to so hold by facts showing contributory negligence on the part of Morgan; other cases touching this subject are Graham v. Grand Trunk R. Co., 25 Ont. L. Rep. 429, 25 Ann. Cas. 1053; Sullivan v. New York, N. H. & H. R. R. Co., 73 Conn. 203; Belt R. Co. v. Skszypczah, 225 Ill. 242.

It will, of course, be readily admitted that a railroad company having a double track has the unquestioned right to change its trains that are in habit of using one of these tracks to the other one whenever it chooses to do so, and it may further be conceded that it is not under any duty to give notice to track walkers or other persons whose duty it is to keep a lookout for trains, of the change in the course of its traffic or the transfer of its trains from one track to another. And sudden emergencies might make it necessary that the course of traffic should be changed from one track to another when it would not be practicable for the railroad company to give notice of this change to all its track repairers or sectionmen scattered at different points along its line of road, or to run its trains at reduced speed for their protection,

although we do not mean in this case to foreclose an inquiry into this question when it comes up, or to lay down as a binding rule that when the course of traffic is changed from one track to another a railroad company owes no more duty to its track repairers and sectionmen to protect them from trains than it would if no change had been made, as this case, under its peculiar facts, may be disposed of without touching the duty and liability of a railroad company to its track repairers generally.

Here this crew of men were engaged in a special work and at a place where we may well assume the company knew on this day and before Asher was killed, that they would be at work, because it had given notice to its engineer to take the north-bound track. It also knew it had a double track at this place and that its south-bound trains habitually used one track and its north-bound trains habitually used the other. In addition to this the sectionmen engaged in this work were not charged with any special duty to look out for trains, and especially were they not charged with the duty of looking out for south-bound trains on the north-bound track, as the south-bound track was not closed to traffic. Neither were they in any immediate danger from south-bound trains, because the foreman had sent a flagman out to flag this train, showing that he anticipated that it would run on the south-bound track. In short, these men had the right to assume that no change in traffic would be made, and so Asher, as we have said, felt entirely safe on the north-bound track.

Coming now to adjudge the law applicable to the facts of this case we think that when a gang of sectionmen or other employes are engaged in a special line of work at a particular place, and the railroad company has notice that this crew of men are engaged at work at this place, it is under a duty, if it changes its trains from one of its tracks to the other, to either give notice to the foreman of the crew of men so engaged of the change in the course of its traffic or to notify the engineers, who are ordered to leave the track which they habitually use and take the other track, of the place where the crew of men are working and direct them to reduce the speed of their trains at this place and proceed with caution, in order that the repairmen may not be misled to their death as was Asher. The imposition of a duty like this is not unreasonable or impracticable, because if the company cannot give timely notice to the foreman in charge of the men that the course of traffic will be changed, it can cer-

tainly give notice to the engineers to look out for the presence of these men when it gives them orders, as it did the engineer in this case, to change from one track to another. And so we think that the company was guilty of negligence on account of its failure to do either of the things we have suggested, as the doing of either of them would have saved the life of Asher, and that Asher was not chargeable with negligence in walking on the north-bound track at the time and in the manner he was using it when killed.

The remaining question in the case relates to the instructions on the subject of the measure of damages. It it insisted that this instruction was erroneous because it did not advise the jury that they should fix the damages at such a sum as would represent the present cash value of the reasonable expectation of pecuniary benefit to the mother of Robert Asher.

It may be conceded, on the authority of C. & O. Ry. Co. v. Kelly, 241 U. S. 485, 60 L. Ed. 1117, and C., N. O. & T. P. Ry. Co. v. Jones' Admr., 177 Ky. 485, that the instruction given by the court was erroneous, but the damages assessed were so small that plainly the railroad company was not prejudiced by the error in the instructions.

Wherefore, the judgment is affirmed.