## Hines, Director General of Railroads v. Hopkins.

(Decided February 21, 1922.)

### Appeal from Garrard Circuit Court.

1. Railroads—Licensees—Lookouts.—There are two classes of licensees on railroads: (a) members of the general public who habitually use the track as a walkway with the knowledge and acquiescence of those in charge of the railroad; (b) track employes

of the railroad who have a right to be upon the premises of the company. To the first group of licensees mentioned above the railroad company and the operatives of its trains owe a lookout duty and are liable for injury inflicted on such licensees unless such lookout was maintained and the trains are operated at such speed and in such manner as to be under the control of the trainmen; while the second group are entitled to be upon the track and premises of the railroad it is their duty to know the schedule of trains, to keep a lookout for them and to avoid coming in contact with them.

2. Railroads—Licensees—Use of Tracks By.—While it is impossible for the court to fix with certainty the number of persons using the track of the railroad as a walkway at a given time and place to constitute such persons licensees and entitle them to the protection of licensees, members of the general public, it may be stated as a general rule, whose use of the tracks is so habitual and continuous that the operatives of the trains, as reasonable persons, must be presumed to know thereof and to anticipate that persons are likely to be upon the track at that point, are licensees and entitled to a lookout.

3. Railroads—Duty to Track Employes.—A track employe required to report for duty at a certain tool house may in going from his place of residence to his place of work travel along the tracks of the company, but in doing so he occupies the same position with respect to a lookout as he would if he had arrived at his place of employment and had actually commenced work and is entitled to no greater protection from train operatives than would have been due him from them had he arrived at his place of employment and commenced to perform his duties.

4. Railroads—Duty to Track Employes.—A railroad, however, owes to its track employes, on the track at night time, the duty of having and keeping upon its engines a reasonably sufficient headlight to enable such employes to know of the approach of trains and to keep out of their way.

B. D. WARFIELD and HUNT, NORTHCUTT & BUSH for appellant.

LEWIS L. WALKER and L. W. BETHURUM for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellee Hopkins was walking along a side track of the L. & N. railroad near Molus, Harlan county, Kentucky, in November, 1918, when he was struck from behind by a freight engine and severely injured, for which he instituted an action in the Garrard circuit court and recovered a verdict for $2,000.00 damages. The Director General of Railroads appeals from the judgment entered

upon the verdict, and insists that the same should be reversed because: (a) the trial court refused to peremptorily instruct the jury to find for the appellant, Director General; (b) the court erred in admitting incompetent evidence for Hopkins, and (c) the court on its own motion gave to the jury erroneous instructions.

Hopkins was a section hand regularly engaged by the Director General at that time in the operation of the L. & N. railroad, and boarded at a house very near the Molus depot. The section gang consisted of eight or ten men, all of whom were required to meet at the tool house of the company at seven o'clock in the morning, daylight saving time, for the purpose of beginning their day's work. The tool house was about one mile from the Molus depot, and there was no road by which Hopkins could travel to the tool house except along the tracks of the railroad, unless he crossed the Cumberland river and went up on the west side thereof to a point opposite the tool house and crossed back to the railroad, which, besides being a bad road, was very much out of his way. The Cumberland valley at that point is very narrow, closed in on either side by high mountains. The railroad right of way occupies practically all of the east side of the valley at that point. Besides the main track there were two side tracks near Molus depot. One of these side tracks was called the house track, used for loading and unloading freight at the Molus depot, and the other side track began just a short distance south of the Molus depot and extended parallel with the main track south beyond the tool house at which appellee Hopkins was required to report each morning, and was known as the passing track. According to appellee Hopkins' testimony he left his boarding house about twenty minutes before seven and started up the main track toward the tool house, but before he had gone far he crossed on to the side track and was proceeding south when he was struck from the rear by one of the large freight engines then in use on the railroad, and which engine was at that time pulling fifty-four cars. About that hour a passenger train from Harlan was due to pass on the main track going north toward Pineville, and appellee Hopkins, knowing this fact, was walking on the side track, and the freight train which struck him and which was traveling south toward Harlan, took the side track at Molus for the purpose of allowing the passenger train to employ the main track. It is the contention of appellee Hopkins,

and his action is based upon the hypothesis that he was, at the time of his injury, a licensee, and had a right to be upon the track at the time and place of his injury, and the operatives of the train were obliged to maintain a lookout for persons on the track at that point at that time of day, which duty they neglected to perform, causing his injury. In support of this insistence appellee says that as he was a regular employe of appellant, and was required to go to the tool house, which was situated beside the track at a point where there was no public highway or passway except over the tracks, and it was necessary for him to travel along the tracks in order to reach his place of employment, and being upon the premises of the company, he was as much entitled to a lookout duty and protection as if he were a licensee, a member of the general public, or if not that, at least the same protection as if he had been in the line of his employment, working at repairing the track, and we think he is correct in his last contention but in error as to his first. He says that there were at that time about twenty or twenty-five houses situated near the Molus depot, in which a number of families lived; that at said place were three stores; that up in the direction in which he was going, a short distance from Molus, was a coal mine at which twenty-five or thirty men worked, and that only a short distance away was a village named Layman, at which there were several houses and a number of people living; that a large number of persons on foot traveled up and down the railroad tracks; that between the hours of six and seven in the morning, and after work time of an evening there would be thirty, forty or fifty people travelling up and down on the track; that these facts were known to the Director General and his employes, and especially the operatives of trains, and by reason of these facts they were charged with the duty of maintaining at that point a lookout duty for persons upon the track.

We have never fixed with definiteness the exact number of persons using the tracks of a railroad longitudinally as a walkway at a given hour and place continuously which will constitute such pedestrians licensees, but we have held in the case of Willis' Administratrix v. L. & N. R. R. Co., 164 Ky. 124, that the use of railroad tracks by as many as one hundred and twenty-five persons through the entire day was not sufficient to constitute such users licensees, and in the recent case of C., N. O. & T. P. R. R. Co. v. Brown, 192 Ky. 724, we held that the use of

the railroad track from six to nine o'clock each night by ten or fifteen people walking on it at the particular place in question was insufficient to give to the users the protection of licensees, which is based upon the idea that the use is so general, habitual and continuous that it is known to and acquiesced in by the railroad or Director General and train operatives, and to put upon said operatives of trains the duty of maintaining a lookout at such places to avoid injury to such persons as may reasonably be expected to be upon the track at said time and place. Henson's Admr. v. Hines, Director General of Railroads, et al., 193 Ky. 199. The gist of what has been said by this court in its many opinions involving this question is that no duty is owed by train operatives to maintain a lookout along the track in front of trains to avoid injury to mere trespassers, but when the use of the track by pedestrians, members of the general public, is so common, general and continuous at a given place and time that the railroad company and those in charge of its trains must be presumed to have knowledge of such constant user of the track and to acquiesce therein, and that the operatives of the trains passing there at regular intervals, as reasonable persons, must anticipate the presence of persons upon the track at that particular place. They must exercise reasonable care to avoid injury to those so using the track, even if such care requires a continuous lookout ahead of the trains at that point to avoid coming in contact with them. L. & N. R. Co. v. Gilmore's Admr., 131 Ky. 132; Blankenship's Admr. v. N. & W. Ry. Co, 147 Ky. 260; L. & N. R. Co. v Mullins' Admrx, 181 Ky. 148; L. & N. R. Co. v Smith's Admr, 186 Ky. 32; L. & N. R. Co. v. Walker, 162 Ky. 209; Gregory v. L. & N. R. Co., 25 Ky. L. R. 1986; Willis' Admrx. v. L. & N. R. Co., 164 Ky. 124; Sublett's Admr. v. C. & O. Ry. Co., 146 Ky. 530; L. & N. R. Co. v. Asher's Admr., 178 Ky. 67; C., N. O. & T. P. Ry. Co. v. Jones' Admr., 171 Ky. 11; L. & N. R. Co. v. Elmore's Admr., 180 Ky. 733, original opinion. We are rather of opinion from the evidence in the case, giving it its strongest import, that there was such a use of the tracks of the railroad at the point where appellee Hopkins received his injury, between the hours of six and seven in the morning as would have justified the trial court in submitting the case to the jury upon the question as to whether appellee Hopkins was a licensee, if said Hopkins had been a member of the general public and not an employe of the railroad company. It is a familiar rule

that a section hand or trackwalker and other such servants of a railroad company are required to know and anticipate the time of arrival of trains and to keep out of their way, and that the operatives in control of a train are not required to maintain a lookout for section hands along the track except in special instances where the crew is known to be at work at a particular place repairing the track, when it is the duty of the operatives of the trains to have their engines under control and to keep a lookout ahead so as to avoid injury to such trackmen, but in the absence of such knowledge on the part of the operatives of the train that the section gang is engaged in repairing the track at a given place, and at a particular hour, no such duty devolves upon them, and it becomes the duty of the trackmen to keep a lookout for trains and to avoid coming in contact with them. It seems to us that the correct and just rule in a case like this, where a trackman regularly employed by the railroad company is proceeding along the track to the place of his employment to take up his duties for the day, he must be considered as an employe and given the same protection and be held to the same duties as if he had arrived at the place of and actually taken up his regular task—had actually taken up his pick or other tools and began to repair the track. If any difference, such an employe, accustomed to maintaining a lookout for passing trains, protecting himself against injury therefrom, should be under greater duty to avoid the trains and the train operatives would be under less duty to him when so walking along the track unengaged than the same train operatives would after he had reached his place of employment and actually begun to work, for naturally his employment would occupy some part of his attention and thus distract it from the dangers of passing trains. If, however, such a trackman on his way to take up his employment, and immediately before he reaches the place where he is to begin work but while on the premises of the employer, be given the status of a regularly employed trackman, he cannot complain. There is a clear distinction between the duties operatives of a train owe to a licensee, who is a member of the general public, and the duty which the same operatives owe to a licensee, who is in the employ of the railroad company repairing its tracks. The latter must exercise care not only to keep out of the way of trains but to inform himself of the schedule of trains so as to better keep out of their way,

and the railroad operatives are under no duty except in special cases to maintain a lookout for such trackman; while the former class of licensees are required only to exercise ordinary care to keep out of the way of trains after they discover or know of their approach, and the operatives of such trains are obliged to maintain a lookout to discover the presence of such persons on the tracks, keep their trains under control and exercise care to avoid injuring such licensees. Appellee Hopkins, while a licensee, belonged to that class of track employes to whom the operatives owed no lookout duty, and not to the other class made up of the general public. It was Hopkins' duty as a track employe to know the schedule of trains and to keep a lookout for them and avoid coming in contact with them, and this duty rested upon him not only while he was engaged with his tools repairing the track, but while he was going to and from his employment over the premises of his employer. In the case of C., N. O. & T. P. R. Co. v. Brown, *supra,* it was held that when such employe is off duty but using the company's right of way in going and returning to the camp cars for his own purposes, he assumes the risk of danger from passing trains, and is required to exercise care to keep out of their way, and was not entitled to a lookout duty from the train operatives. L. & N. R. Co. v. Hyatt, 191 Ky. 85; Williams' Admr. v. C. & O. R. Co., 181 Ky. 313; L. & N. R. Co. v. Mullins' Admrx., 181 Ky. 148. It, therefore, appears that the established rule in this jurisdiction precludes a track employe from recovery where his cause is based upon the duty to maintain a lookout by train operatives for him while he is on duty repairing the track, or going to or returning from his employment over the premises of his employer. If, as it appears, the train operatives did not owe a lookout duty to appellee Hopkins, he could have no cause of action against the Director General, unless his presence was discovered upon the tracks by the train operatives in time to have avoided injury to him, and the train operatives failed to exercise ordinary care to warn him and to avoid injury to him. The evidence on this point shows conclusively that the train operatives did not see or know of the presence of Hopkins on the track until he was struck. With all these facts before the trial court the motion for a directed verdict, made by counsel for the Director General at the conclusion of the evidence for the plaintiff as well as at the conclusion of all the evidence, should have been sustained. If upon

another trial the evidence with respect to the habitual use of the track by appellee Hopkins and others is in substance the same, the court will direct the jury to find and return a verdict for the Director General, unless it shall reasonably appear that the injury to appellee Hopkins occurred in the dark at a time when the engine which struck him carried no headlight and the want of such headlight was the proximate cause of the injury to him, in which event that issue alone should be submitted by proper instruction.

Judgment reversed. Whole court sitting.