## Thomas' Adm'r v. Chesapeake & O. R. Co.

(Decided May 10, 1932.)

WAUGH & HOWERTON for appellant.

BROWNING & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal presents for consideration the propriety of the ruling of the trial court in giving to the jury, at the close of the evidence in behalf of the appellant, a peremptory instruction, directing it to find a verdict for the appellee.

James Thomas, a young man twenty years of age, and Sparrel Lowe, a boy sixteen years of age, in August, 1928, resided at Mossy Bottom, Pike county, Ky. They each equipped themselves with a suitcase, in which they carried their convenient wearing apparel, and left home intending to obtain employment, and to view and experience the world of a larger horizon than was observable from their native surroundings, which are frequently the ambition of the youth of the countryside. On reaching the railroad, "without let or hindrance," they boarded a passing freight train and rode in to Russell, thence to Ashland, Ky. Not finding work at either of these places, on the morning of the 8th of August, they rode a street car to Catlettsburg. They left the street car at Division street, Catlettsburg, on which the railroad depot was located. They went to the depot, walked up the railroad and stopped at the toolhouse of the Chesapeake & Ohio Railroad Company. A short distance from, and in sight of, it, the city was constructing a street. They approached the contractor in charge of the work, and asked for employment, which was refused. They crossed the railroad tracks, returned to and sat down by the toolhouse, rested, and ate their dinner, which they had obtained at an establishment across the street. While at the toolhouse, a freight train of the Chesapeake & Ohio Railroad Company approached them, going east toward Huntington, W. Va., running on the south or east-bound track, or the track furtherest from the toolhouse. James Thomas left his suitcase, caught one of the coal cars of a freight train, hung to the stirrup and rode on it east, a distance of approximately 125 to 150 feet, when he jumped off and walked over onto the west-bound track, and there started walking back down it toward the toolhouse. As he went from the point where he alighted from the freight train he walked on the outer edge of the ties, with his face toward the west. After so walking a distance of about 65 feet, a passenger train coming from the east struck and killed him. At that time the freight train was still passing on the east-bound track. A curve was in the track a short distance east of where he was killed. At the time he alighted from the freight train, the passenger train was not in sight. No signal or warning of any kind was given by it. The freight train on which Thomas rode the distance we have stated, was the first train which passed the toolhouse after Thomas and Lowe's arrival at the depot. The

passenger train which struck the deceased was traveling at a high rate of speed, approximately 45 miles an hour. The place of the accident was within the corporate limits of Catlettsburg, and at a place on the tracks where the public generally and habitually were accustomed to travel and to cross the railroad tracks. Neither before nor at the time the deceased boarded the freight train did he make any statement to his companion of his intention or purpose in so doing. When he got on the freight train he left his grip setting at the toolhouse, where he and his companion had been sitting. The appellant appeals from a judgment entered in conformity with a verdict of the jury, returned in accordance with a peremptory instruction.

The appellee urges that the deceased and Lowe were on the railroad's premises for the purpose of stealing a ride on one of its trains; that deceased had actually boarded the first train going east, but that he got off only because it was going too fast for his companion to get on with the suitcases, and that the accident was the direct result of an actual trespass on its property.

The appellee contends that the licensee doctrine is not applicable in this case, for the reason the deceased had actually committed a trespass by boarding one of its freight trains while in motion, and was present on its premises with the avowed intention of stealing a ride on some one of its trains; that therefore his estate cannot invoke the protection of the authority and right of a licensee to use the walkway, for the purpose of a recovery herein. To sustain its contention, it cites section 805, Ky. Statutes; McQuary v. L. & N. R. R. Co. (Ky.) 128 S. W. 329; Louisville & N. R. R. Co. v. Philpot's Adm'r, 215 Ky. 682, 286 S. W. 1078; Cornett's Adm'r v. L. & N. R. R. Co., 181 Ky. 132, 203 S. W. 1054; Louisville & N. R. R. Co. v. Smith's Adm'r, 186 Ky. 32, 216 S. W. 1063; Bevin's Adm'r v. C. & O. R. R. Co., 190 Ky. 501, 227 S. W. 794; Lee's Adm'r v. Hines, 202 Ky. 240, 259 S. W. 338; Davis v. Crawford's Adm'x, 203 Ky. 61, 261 S. W. 835; Southern Ry. Co. v. Clark, 105 S. W. 384, 32 Ky. Law Rep. 69, 13 L. R. A. (N. S.) 1071; Illinois Cent. Ry. Co. v. Cotter, 103 S. W. 279, 31 Ky. Law Rep. 679; Kentucky H. R. Co. v. Creal, 166 Ky. 469, 179 S. W. 417, L. R. A. 1916B, 830, Ann. Cas. 1917C, 1205; Freeman's Notes, 48 Am. Dec. 636.

In McQuary v. L. & N. R. R. Co., the plaintiff was picking up coal from under a car in defendant's yard at a point about 30 feet distant from a pathway which for many years past had been daily used by many persons going to and from the mills and factories and the Union Depot to the east and other parts of the city of Henderson, when defendant's switch engine and train, without giving warning signals, run over him, crushing and mangling his arm so that it had to be amputated. The trial court sustained a demurrer to the petition. Its action was affirmed by this court.

In Louisville & N. R. R. Co. v. Philpot's Adm'r, the deceased was picking up coal at the time he was killed on the track of the company, instead of using it as a walkway. This court held that the company owed him as a licensee no duty, if, at the time he was struck by the train, he was picking up coal on the track instead of using it for a walkway, though the place was habitually used as a walkway by the general public.

In Cornett's Adm'r v. L. & N. R. R. Co., the deceased was sitting on the railroad track. In Bevins' Adm'r v. C. & O. R. R. Co. and Schump, the deceased was lying on the railroad track shortly after 1 o'clock on an unusually dark night. In Louisville & N. R. R. Co. v. Smith's Adm'r, and Lee's Adm'r v. Hines, Director, etc., and Davis, Director, etc., v. Crawford's Adm'x, it was said that the law which imposes upon railroads the duty in favor of licensees will not be extended "so as to include sleepers or persons sitting or lying upon the ties or tracks."

In Kentucky H. R. Co. v. Creal, the plaintiff purchased a ticket entitling him to passage on the train which he attempted to board while it was in motion. It was held that he was a trespasser in so doing, and that the railroad company owed him no duty, except that of exercising ordinary care to avoid injury to him after the discovery of his peril.

In Louisville & N. R. R. Co. v. Pendleton's Adm'r, 126 Ky. 605, 104 S. W. 382, 31 Ky. Law Rep. 1025, the deceased, while engaged in assisting the switching crew, was killed by being crushed between two cars. He jumped up on one of the cars, putting his foot in the stirrup on the bottom of the side of the car, holding on to the ladder attached to the side of the car, and, while thus riding on the side of the car, he was struck and

almost instantly killed by coming in contact with an empty coal car standing on the coal track as the car on which he was riding passed it. It was held that the company owed him no duty until after his peril was discovered; that he was a volunteer or trespasser at the time of his death.

In Illinois Cent. R. R. Co. v. Cotter, the plaintiff attempted to board a moving train, and hung on to the hand rail until the train had run about 800 yards, when he fell and sustained the injury. It was held the company owed him no duty until his dangerous position was discovered by the company's servants in charge of the train, and, after they knew it, they, by the exercise of ordinary care with the means they had at hand, could avoid the injury to him.

The cases holding that a railroad company owes no duty to a trespasser on the track until the trainmen discover his peril, although he may be at a place usually and ordinarily used by the public for the purpose of travel, are collected in Bevin's Adm'r v. C. & O. R. R. Co., supra, and in Wimsatt's Adm'x v. L. & N. R. R. Co., 235 Ky. 405, 31 S. W. (2d) 729. None of them involves a state of facts at all comparable to the facts under review.

It is a familiar rule that, when the place at which an accident on the tracks of a railroad company occurs is within the corporate limits of a town, this fact will not itself impose upon the company the duty of lookout and giving warning (Cincinnati, N. O. & T. P. Ry. Co. v. Blankenship, 157 Ky. 699, 163 S. W. 1123), but, if the point is in a town or city where those in charge of the train have a right to expect that persons will be crossing or traveling on the tracks, it is its duty to keep a lookout. Gunn v. Felton, 108 Ky. 561, 57 S. W. 15, 22 Ky. Law Rep. 268. Also, if the tracks of the railroad are frequently and habitually used by the public as a footway with the knowledge and acquiescence of the company, at the time and the place where persons on the tracks are to be anticipated, then it is the duty of the company or those in charge of the train when moving the cars on that part of the track to keep a lookout for persons using it as a footway, and to give reasonable signals and warnings of the movements of the cars when approaching such place and to run its trains at such speed as ordinary care requires for the safety of

such persons. Louisville & N. R. R. Co. v. McNary's Adm'r, 128 Ky. 408, 108 S. W. 898, 32 Ky. Law Rep. 1266, 17 L. R. A. (N. S.) 224, 129 Am. St. Rep. 308.

Persons using a footpath under the circumstances and at the place indicated are licensees. "There are two classes of licensees on railroad tracks, (a) a member of the general public who voluntarily uses the track as a walkway with the knowledge and acquiescence of those in charge of the train; (b) track employees of the railroad who have a right to be upon the premises of the company." To the first group the railroad company in the operation of its trains owes the duty we have stated above and is liable for injuries inflicted upon such licensees unless they were, at the moment the injury or death was suffered, simultaneously engaged in trespassing or violating a statute. Louisville & N. R. R. Co. v. Gilmore's Adm'r, 131 Ky. 132, 109 S. W. 321, 33 Ky. Law Rep. 74, 21 L. R. A. (N. S.) 723; Blankenship's Adm'r v. N. & W., 147 Ky. 260, 143 S. W. 995; Louisville & N. R. R. Co. v. Mullins' Adm'x, 181 Ky. 148, 203 S. W. 1058; Louisville & N. R. R. Co. v. Smith's Adm'r, 186 Ky. 32, 216 S. W. 1063; Louisville & N. R. R. Co. v. Walker's Adm'r, 162 Ky. 209, 172 S. W. 517; Willis' Adm'x v. L. & N. R. R. Co., 164 Ky. 124, 175 S. W. 18; Sublett's Adm'r v. C. & O. R. R. Co., 146 Ky. 530, 142 S. W. 1060; Louisville & N. R. R. Co. v. Asher's Adm'r, 178 Ky. 67, 198 S. W. 548, L. R. A. 1918B, 211; Louisville & N. R. R. Co. v. Elmore's Adm'r, 180 Ky. 733, 203 S. W. 876; Hines v. Hopkins, 194 Ky. 441, 239 S. W. 792.

It must be conceded that the deceased in the present case was a trespasser, and had violated section 805, Ky. Statutes, by his act of boarding, swinging on, and jumping off the appellee's freight train, and, if he had been killed while so engaged, his conduct would preclude a recovery herein, for the railroad company owed him no duty while so engaged until after his peril was discovered by the trainmen in charge of the train which struck and killed him. The trespass committed by him in engaging in such conduct was consummated when he alighted from the train. It was consummated before he returned to the pathway used by the general public for the purpose of travel and before he walked in the direction of the toolhouse. He was not a trespasser, but occupied the position of a licensee when so using the pathway, and the appellee and its servants in

charge of its trains at that time and place owed him, as a member of the general public, the same duty which they owed any other member thereof, i. e., a duty to keep a lookout and give reasonable warnings of the movement of its trains when approaching the pathway, and to run them at such speed and in such manner as to be under the control of the trainmen, as ordinary care for his safety required. This is true, though it be conceded that the deceased and his companion were at the appellee's depot, at, or prior to, the time the deceased was struck and killed by its train, with the intention and for the purpose of stealing a ride on some one of its trains. The general rule of public policy and of the law that no action may be maintained which arises out of a trespass of a plaintiff or of his violation of a general law (Levy v. City of Kansas [C. C. A.] 168 F. 524, 22 L. R. A. [N. S.] 862) has no application to the facts proven in this case.

Neither the motive or reason which induced the deceased on that occasion to be at the depot of the appellee, nor the unlawful or wrongful conduct which he had been engaged in, either remotely or recently, next before the moment he was struck and killed by the passenger train on the pathway, excuses the failure of the appellee and those in charge of its train to observe the duty which they owed to him, at that time and place, as a licensee; nor preclude the right of his estate to recover for the destruction of his life at that time and place. All other questions reserved.

Judgment reversed for proceedings consistent with this opinion.