## Louisville & N. R. Co. v. Brush's Adm'r.
### (Decided March 27, 1936.)

ASHBY M. WARREN, C. S. LANDRUM, H. T. LIVELY, J. P. HAMILTON and O. H. POLLARD for appellant.

WILLIAMS & ALLEN for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an appeal from a judgment for $4,000 for the death of Cas Brush, who was run over and killed by one of appellant's engines in its yards at Jackson, Ky.

The accident happened early in the morning of March 21, 1934, on what is known as the "hole" track

which leaves the yard tracks and runs north off of the railroad property to the Powell-Hackney Grocery Company store. A spur which diverges from this track runs to the Standard Oil Company plant. The track is known as the "hole" track because it is on a lower elevation than the main track and the yard tracks. The railroad depot and yards are located in South Jackson, south of the North fork of the Kentucky river. The business section of Jackson is located north of the river, and a bridge crosses the river a few hundred feet west and north of the depot. The yards extend eastwardly from the depot several hundred feet. Between 500 and 800 people live in South Jackson, most of them south of the railroad tracks, and there is proof that a considerable number of them use the railroad tracks in going to and from the business section of the city, although there is a road on each side of, and parallel to, the railroad yards. There are twelve or fifteen dwellings north of the railroad yards and between the yards and the river. The deceased boarded with Ben F. Hiler, who lived north of the railroad yards and about 800 feet from the point where the accident occurred. The plaintiff practiced his case on the theory that the track at the point where his intestate was killed was used by the public to such an extent as to make it a place where the presence of persons upon the track might reasonably be anticipated, and that the railroad company's employees in charge of the engine in question negligently failed to maintain the lookout duty thus imposed upon them. The appellant contends that the evidence wholly fails to show that its tracks at, or near, the point where the accident occurred were habitually used by the public in such large numbers that the presence of persons on the track at that point should be anticipated, and that the deceased, therefore, was a trespasser and not a licensee.

The evidence shows that the deceased was on his way from the Hiler home to the business section of Jackson. One witness met him in the roadway north of the railroad right of way just before the accident. Decedent left the road and turned and started across the track. At that time a switch engine was backing along the "hole" track toward the Powell-Hackney Grocery Company store at a speed of about 18 miles per hour. The brakeman testified that he saw the deceased start across the track when the engine was about

30 feet away. He gave a stop signal to the engineer and the emergency. brakes were immediately applied, but the engine struck the deceased and came to a stop with the first trucks of the tender over him. Two of appellee's witnesses stated that the engine was 12 or 15 feet away when the deceased started across the track. The evidence as to whether a lookout was being kept or warning signals were given was conflicting, but if the deceased was a trespasser the railroad company did not owe him a lookout duty. A number of witnesses testified as to the extent of the use of the tracks by the public. One or two testified that as many as 200 to 400 people used the tracks daily, but most of the witnesses placed the number at 100 to 200. Some of them testified as though the railroad yards were used indiscriminately, but when questioned further all of them stated. that most of the people residing in South Jackson, who used the railroad yards in going to and from the business section of the city, traveled along the main track where there is a beaten path. This path was 75 or 100 feet from the "hole" track where the deceased was killed. There was no evidence that the "hole" track was used by the public except occasionally. The evidence was probably sufficient to constitute the deceased a licensee if he had been using the path near the main track at the time of his injury, but the use of a well-defined portion of the railroad yards by a sufficient number of persons to impose a duty of lookout and warning does not extend that duty to persons in other portions of the yard or at other places on the railroad tracks. The duty of lookout and warning is confined to the place where the presence of persons upon the track may reasonably be anticipated, and this duty is imposed upon the railroad company because that portion of its right of way has been habitually used by the public.

Appellee relies upon a line of cases of which Cincinnatin, N. O. & T. P. R. Co. v. Harrigan, 149 Ky. 53, 147 S. W. 942, and Chesapeake & Ohio R. Co. v. Warnock's Adm'r, 150 Ky. 74, 150 S. W. 29, are examples, which hold that a lookout duty is required of railroads in cities, towns, and thickly settled communities where the presence of persons upon the tracks may reasonably be anticipated; but an examination of those cases discloses that there was evidence showing the habitual use of the track at the point of the accident by large

numbers of persons. In Thomas' Adm'r v. Chesapeake & Ohio R. Co., 245 Ky 352, 53 S. W. (2d) 546, 548, it was said:

"It is a familiar rule that, when the place at which an accident on the tracks of a railroad company occurs is within the corporate limits of a town, this fact will not itself impose upon the company the duty of lookout and giving warning (Cincinnati, N. O. & T. P. Ry. Co. v. Blankenship, 157 Ky. 699, 163 S. W. 1123), but, if the point is in a town or city where those in charge of the train have a right to expect that persons will be crossing or traveling on the tracks, it is its duty to keep a lookout. Gunn v. Felton, 108 Ky. 561, 57 S. W. 15, 22 Ky. Law Rep. 268. Also, if the tracks of the railroad are frequently and habitually used by the public as a footway with the knowledge and acquiescence of the company, at the time and the place where persons on the tracks are to be anticipated, then it is the duty of the company or those in charge of the train when moving the cars on that part of the track to keep a lookout for persons using it as a footway, and to give reasonable signals and warnings of the movements of the cars when approaching such place and to run its trains at such speed as ordinary care requires for the safety of such persons. Louisville & N. R. Co. v. McNary's Adm'r, 128 Ky. 408, 108 S. W. 898, 32 Ky. Law Rep. 1266, 17 L. R. A. (N. S.) 224, 129 Am. St. Rep. 308."

In the present case there was no proof that the "hole" track was used by pedestrians. In fact, it was not a convenient way for the residents of South Jackson to travel to and from the business section of the city. The only section of the yards shown to be used by a considerable number of persons was the path parallel and adjacent to the main track. The main track was in the south portion of the yards, while the point where the accident occurred was in the extreme north portion of the yards. In Hungate v. Hines, 188 Ky. 365, 222 S. W. 83, the plaintiff was struck by a railroad train while he was on the tracks only a few feet from a public crossing. It was held that he was at a place on the railroad tracks where he had no right to be and therefore was a trespasser. The trial court sustained the motion of the railroad company for a directed ver-

542

dict, and the judgment was affirmed. In Louisville &
N. R. Co. v. Redmon's Adm'x, 122 Ky. 385, 91 S. W.
722, 725, 28 Ky. Law Rep. 1293, it was said:

"While it is the duty of those in charge of trains,
in approaching a public crossing, whether in a city
or the country, to give the customary and neces-
sary signals for the protection of the persons hav-
ing the right to use such crossing, this duty need
not be performed for the benefit of trespassers who
may be using the track elsewhere."

Where a portion of a railroad right of way has
been habitually used by the public to such an extent
as to impose on the railroad company the duty of anti-
cipating the presence of persons thereon, its servants
in charge of its trains must maintain a lookout for per-
sons at such place and give warnings of the move-
ments of the trains; but such duty does not extend to
portions of the right of way or tracks not so used by
the public. The appellee's intestate was using the
tracks at a point where those in charge of the engine
were under no duty to anticipate the presence of per-
sons on the track, and they owed him no duty except
to use reasonable care to avoid injuring him after dis-
covering his peril. There is no evidence of negligence
in this respect.

It follows that the trial court erred in overruling
appellant's motion for a directed verdict in its favor.
Other questions are discussed in appellant's brief, but
it is unnecessary to consider them.

Judgment reversed.